UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| NATHAN BEST, MATTHEW CHMIELEWSKI; AND JAY HICKS, individually and on behalf of a class of similarly situated participants in the now-terminated ISCO Industries Inc. Employee Stock Ownership Plan, <br><br> *Plaintiffs*, <br><br> v. <br><br> STEPHEN C. JAMES, JAMES J. KIRCHDORFER, SR. IRREVOCABLE FAMILY GSST TRUST; JAMES J. KIRCHDORFER, SR. DELAWARE TRUST; JAMES J. KIRCHDORFER, JR.; JAMES J. KIRCHDORFER, JR. PIPE REALITY TRUST; PIPE REALITY DELAWARE TRUST; MARK T. KIRCHDORFER; MARK T. KIRCHDORFER FAMILY GSST TRUST; MARK T. KIRCHDORFER FAMILY DELAWARE DYNASTY TRUST; and ISCO INDUSTRIES, INC., <br><br> *Defendants*. | No.  3:20-cv-299-JRW |

**CLASS ACTION COMPLAINT**

Plaintiffs bring this suit pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* In particular, Plaintiffs seek relief relating to losses they incurred in connection with the sale of stock of ISCO Industries, Inc. ("ISCO") from a now-terminated employee stock ownership plan ("ESOP") in which they were participants, back to the prior owners of that stock at a grossly deficient price in a prohibited and imprudent transaction.

1

*Parties, Jurisdiction, and Venue*

1. Plaintiff Nathan Best is an Oklahoma resident. Plaintiff Matthew Chmielewski is an Indiana resident. Plaintiff Jay Hicks is a Florida resident. Plaintiffs were participants in the ISCO Industries Inc. Employee Stock Ownership Plan (the "ISCO ESOP"). Their interests in the ISCO ESOP were vested on or before February 14, 2018.

2. Defendant Stephen C. James is a Louisville-based consultant. Mr. James became the Trustee of the ISCO ESOP in Fall 2017, after the Kirchdorfers determined to replace then-Trustee, Wilmington Trust, N.A., for its reluctance to approve the buyback transaction described further below. At the time, Mr. James had very limited experience serving as an independent trustee for an ESOP and instead was the full-time CFO of a large chain of dental practices.

3. Defendant James J. ("Jimmy") Kirchdorfer, Jr. is the Chair and CEO of ISCO, a company his father, James J. Kirchdorfer, Sr., formed in 1962.

4. Defendant Mark T. Kirchdorfer is President of ISCO and Jimmy's brother.

5. The various trust defendants all are for the benefit of the Kirchdorfer family and were among the purchasers of ISCO stock in the buyback transaction described further below.

6. The Plan Administrator of the ISCO ESOP was a Committee appointed by ISCO's Board of Directors, which at all relevant times was controlled by Jimmy and Mark Kirchdorfer. Indeed, publicly available information indicates that they have been ISCO's only or majority directors at all relevant times.

7. Because Jimmy and Mark Kirchdorfer: (*i*) were the sole or controlling directors or ISCO; (*ii*) were the two top executives of ISCO (indeed the only two ISCO

acknowledges on its website); (*iii*) had full authority to dictate membership of the Committee charged with administering the ESOP, with Mark serving on the Committee; and (*iv*) together with ISCO and the Trusts, the purchasers in the buyback transaction, Plaintiffs refers to Jimmy and Mark Kirchdorfer, ISCO, and the trusts collectively herein as the "Kirchdorfer Defendants," except were otherwise specified.

8. The Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

9. Venue is proper in this District because Defendants James, the Kirchdorfers, and ISCO reside or are present in this District and a substantial portion of events giving rise to these claims occurred here.

*Factual Background*

10. ISCO is a privately held company headquartered in Louisville, with at least 350 employees at all relevant times. ISCO operates over thirty locations in the U.S. and abroad and specializes in an array of customized piping solutions. ISCO has been a subchapter S corporation at all relevant times, and there is no established market on which its securities are readily tradable.

11. ISCO formed the ISCO ESOP in 2012, with the Kirchdorfers and their Trusts agreeing to sell the outstanding shares of ISCO stock to the ESOP for $98 million, or approximately $24.50/share. In connection with the sale, ISCO loaned the ESOP $98 million to fund the transaction. Wilmington Trust, then serving as Trustee, represented the ESOP in that transaction, which is the subject of litigation in federal court in Delaware, *Swain v. Wilmington Trust*, No. 17-071-RGA-MPT (the "2012 Transaction Litigation"). The principal allegation in that litigation is that Wilmington Trust violated its ERISA duties in

agreeing to a dramatically inflated valuation and price for the shares of ISCO stock as of 2012.

12. By Summer 2016, with ISCO experiencing financial doldrums, the Kirchdorfer Defendants saw an opportunity to buy back the ISCO stock they had sold to the ESOP four years earlier and began plotting to do so. Because the price for any buyback would necessarily be determined in large measure based on trailing twelve months of financial results and informed financial forecasts for the coming year, the timing of any buyback necessarily would have a major impact on the appropriate sales price.

13. By August 2017, ISCO's financial fortunes had begun to look up, dramatically so, as a result of a confluence of events including Hurricane Harvey, which had the effect of both driving great demand for industrial piping at the same time that a large part of the supply was being eliminated. The Company had experienced a similar trend in 2006 and 2007 in the wake of Hurricane Katrina. As a result, Jimmy Kirchdorfer accelerated the plot to take ISCO's stock back from the ESOP, including by expressing his views that the ESOP was inconsistent with the Company's business circumstances and pressuring plan participants to write out short narratives for him to the effect that they disliked the ESOP and did not value ownership of ISCO stock through the Plan, for use in his strategy to terminate the ESOP.

14. The next month, September 2017, the Kirchdorfer Defendants replaced Wilmington Trust as the ESOP's Independent Trustee and quietly installed Stephen James, a local CPA with little experience serving as an independent trustee. Indeed, at the time and as noted above, Mr. James' "day job" was as chief financial officer of a chain of dental practices and had been "moonlighting" sporadically in ESOP consulting for approximately

a decade. Wilmington Trust was replaced because of its hesitation to approve the buyback the Kirchdorfer Defendants were pushing.

15. In October 2017, ISCO executives gathered in person in Louisville to finalize financial forecasts for 2018. The consensus view of the numerous executives present—at least those without a conflict of interest or ulterior motives—was that 2018 would be a stellar year financially in light of the continuation of trends that had emerged in the second half of 2017. Of course, those forecasts necessarily would need to be reflected in any fair sales price for ISCO stock. As a result, at the forecast meeting, Jimmy Kirchdorfer repeatedly and uncharacteristically attacked the forecasts as too high, demanding that they be lowered.

16. Stephen James, the new Trustee for the Plan, approved the Plan's sale of ISCO stock back to the Kirchdorfer Defendants for $96.6 million.[1] (Thus, according to those values, the outstanding shares of ISCO were worth about $1.4 million less in 2018 than when the ESOP was formed in 2012, despite that the Company was substantially more profitable, and facing a rosy forecast, when the ESOP terminated than when it was formed.) Mr. James made no inquiry of any ISCO sales executives concerning the company's forecasts or valuation, and to Plaintiffs' knowledge, did not solicit the opinion of any participants, much less conduct even an informal survey of participants concerning the proposed transaction or its terms.

---

[1] In particular, the Company purchased 2,928,774.6743 unallocated shares from the ESOP for total consideration of $74,514,504 (of which $322,165 was cash and the rest forgiveness of the 2012 loan the ESOP used to purchase the shares), or $25.44/share. The Kirchdorfers purchased the 898,782.5953 allocated shares for $22,119.040, or $24.61/share. Neither the Company, nor the Kirchdorfers, nor the Committee, nor the "Independent" Trustee explained why the allocated shares—in which participants had vested interests—were priced lower than the unallocated shares.

17. In fact, the forecasts presented in October 2017 and self-servingly rejected by Jimmy Kirchdorfer were reasonable and proved to more accurately reflect the actual 2018 historically high revenue and profit results: 2018 was ISCO's best financial year ever; with 2019 coming in second place. Fully anticipating that the true forecasts would come to fruition, the Kirchdorfer Defendants became the owners of ISCO's stock on February 14, 2018, so that they, and not the Plan participants, could enjoy those record-breaking financial results.

18. Relatedly, and consistent with the Company's improving trends, the Company's trailing twelve months (TTM) financial results as of January 31, 2018 were several million dollars higher than TTM financial results as of December 31, 2017. In addition, and apart from those forecasting and TTM issues, the Company paid a substantial sum to settle litigation in Canada in December 2017, which had a one-time impact on that month's EBITDA, but which should have had no effect on the value of stock held by the ESOP. On information and belief, the valuation of the ESOP's holdings in ISCO stock did not appropriately treat either January 2018 results or the December 2017 settlement impact. Moreover, Defendants inexplicably did not allocate ISCO stock to participants at year end 2017, despite that the Plan remained in full force at that point in time.

19. As the Kirchdorfer Defendants knew and the new Trustee should have known, the sales price for the buyback did not remotely reflect the fair value of the shares as of February 14, 2018.

## Class Allegations

20. Plaintiffs bring these claims on behalf of all persons who were participants in the ISCO ESOP when it sold its ISCO shares effective February 14, 2018 and/or

beneficiaries of those participants. Excluded from the Plaintiff Class are the individual Defendants and their immediate families and the officers and directors of ISCO.

21. The Plaintiff Class is so numerous that joinder of all members is impracticable. The Plan's Form 5500 required by the Department of Labor, IRS, and Pension Benefit Guaranty Corporation indicates that at the beginning of 2018, the Plan had 411 participants. The exact number and identities of Class Members is easily ascertainable from the ESOP through discovery of its records.

22. Questions of law and fact common to the Plaintiff Class include, but are not limited to, the following:

    A. Whether Defendants engaged in a prohibited transaction under ERISA by permitting the ESOP to sell its ISCO stock to Defendants effective February 14, 2018;

    B. Whether Defendants engaged in a prudent investigation of the proposed sale of ISCO stock by the ESOP;

    C. Whether Defendants breached a fiduciary duty to ESOP participants by causing the ESOP to sell its ISCO stock effective February 14, 2018 for less than Fair Market Value; and

    D. The economic consequences to the ESOP and its participants as a result of Defendants' fiduciary violations.

23. Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other ESOP participants in the Plaintiff Class, suffered a loss measured by the difference between the true fair market value of the ESOP's ISCO holdings and the price at which those holdings were transferred to the Kirchdorfer Defendants.

24. Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation.

25. Class certification is appropriate pursuant to Rule 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would in turn establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members. In addition, Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

### Count I - Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3)

26. Plaintiffs incorporate the foregoing allegations.

27. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge all duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan

8

solely in the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

28. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good any losses resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

29. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409, 29 U.S.C. § 1109.

30. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

31. Defendants were fiduciaries with respect to ESOP because they exercised discretionary authority respecting management of such plan, or disposition of its assets, and had discretionary authority in the administration of the Plan for all practical purposes.

32. Under the "no further inquiry rule," the February 14, 2018 ESOP Transaction should be set aside due to Defendants conflicts of interest and violations of their duties.

33. Defendant James breached his duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following: failing to undertake a reasonable, good faith investigation into the fair market value of the ESOP's holdings in ISCO stock as of February 14, 2018; to the extent he relied on Stout Risius Ross' 2017 year-end fair value report, failing to determine that that report was

tainted, as any investigation would have revealed, and in any event does not reflect the fair market value of the ESOP's ISCO holdings as of February 14, 2018; failing to investigate the circumstances of the removal of Wilmington Trust as Trustee; causing the ESOP to sell its ISCO stock for less than Fair Market Value on February 14, 2018; failing to conduct a thorough review of whether the ESOP's sale of ISCO stock—virtually all of its assets—was in the best interests of the Plan participants; and failing to negotiate a transaction at arm's length in the best interests of all Plan participants.

34. The Kirchdorfer Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following: causing the removal of Wilmington Trust and appointing James principally to rubber-stamp the buyback; determining that the February 2018 ESOP Transaction was in the best interests of and fair to the Plan and Plan participants; causing the ESOP to sell its ISCO stock for less than Fair Market Value in February 2018; failing to conduct a thorough and independent review and adequately consider whether the ESOP's February 2018 sale of ISCO stock was in the best interests of the Plan participants; and failing to properly monitor the acts and omissions of the Trustee or the Committee.

35. Defendants' acts and omissions caused tens of millions of dollars of losses to the Plaintiff Class.

**Count II - Engaging in Prohibited Transactions in Violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)**

36. Plaintiffs incorporate the preceding paragraphs.

37. ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange … between the plan

10

and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

38. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

39. ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the Fair Market Value of the asset, and the fiduciary must conduct a prudent investigation to determine the Fair Market Value of the asset.

40. Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the December 2011 ESOP Transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendants failed to ensure that the ESOP received Fair Market Value for the ISCO stock sold by the ESOP to the Kirchdorfer Defendants in February 2018. Specifically, the ESOP received substantially less than Fair Market Value for those shares.

41.     Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to sell its ISCO stock for less than adequate consideration in February 2018. Defendants failed to conduct an independent and prudent investigation into the fair market price before entering into the stock purchase agreement. Defendants failed to ensure that they secured a reliable and independent expert appraisal of the Fair Market Value of ISCO stock as of the February 14, 2018 transaction; failed to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances; and failed make certain that the ESOP was represented by an independent trustee in the Transaction.

42.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good any losses resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

43.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

44.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan. Appropriate equitable relief includes (but is not limited to) imposition of a constructive trust, disgorgement, accounting for profits, imposition of an equitable lien, and surcharge.

45.     Defendants have caused millions of dollars of losses to the ESOP

by the prohibited transactions in an amount to be proven more specifically at trial.

## Request for Relief

Plaintiffs request the following relief on behalf of the proposed class:

A. Certify this action as a class action pursuant to Rule 23, with the named Plaintiffs as class representatives and their counsel as class counsel;

B. Declare that Defendants have breached their fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;

C. Declare that Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to sell its ISCO stock to the Kirchdorfer Defendants for less than adequate consideration;

D. Declare that the February 2018 ESOP Transaction should be set aside under the no further inquiry rule;

E. Order that Defendants make good on the losses resulting from their breaches and restoring any profits they have made through use of assets of the ESOP;

F. Order the establishment of a successor trust for benefits owing to participants and beneficiaries whose Plan accounts have been distributed;

G. Order Defendants to pay prejudgment interest;

H. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund; and

I. Award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

*s/ Clark C. Johnson*
Clark C. Johnson
Michael T. Leigh
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
cjohnson@kaplanjohnsonlaw.com
mleigh@kaplanjohnsonlaw.com
Tel: (502) 242-9042

*Counsel for Plaintiffs*

14