UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
*Electronically Filed*

NATHAN BEST, et al.

*Plaintiffs,*

v.

STEPHEN C. JAMES, et al.

*Defendants.*

Civil Action No 3:20-CV-299-JRW

## MOTION TO DISMISS CLASS ACTION COMPLAINT

This lawsuit is nothing more than an attempt by a group of former employees to extract additional funds from ISCO because they were unhappy with the result of a prior lawsuit addressing the price of ISCO stock held in the same ISCO benefit plan, the ISCO Employer Stock Ownership Plan ("ESOP").  In 2017, a separate group of named plaintiffs brought suit against Wilmington Trust, the ESOP's then trustee, alleging that it had overpaid for ISCO stock that it had acquired for the ESOP in connection with the ESOP's creation in 2012.  That lawsuit recently settled for $5 million.  *See* Class Action Settlement Agreement, *Swain v. Wilmington Trust*, No. 17-071-RGA-MPT, Dkt. No. 100 (D. Del. Dec. 27, 2019).  The three named plaintiffs in this suit, Messrs. Best, Chmielewski, and Hicks, led a group of objectors to that settlement.  Among other things, they complained that the settlement amount was insufficient and thus unreasonable.  *See*

Objections to Proposed Class Action Settlement of Best et al., *Swain v. Wilmington Trust*, No. 17-071-RGA-MPT, Dkt. No. 111 (D. Del. April, 24, 2020).[1]

To hedge their bets on their objection, Plaintiffs almost simultaneously filed the instant lawsuit claiming that ERISA was violated again in early 2018, this time in connection with the termination of the ESOP and the ESOP's sale of its ISCO stock (the "2018 Transaction") for approximately the same price it originally paid. Even though the ESOP, as a result of the $5 million *Swain* settlement and the 2018 Transaction, recovered substantially more than it paid for its ISCO stock, Plaintiffs now claim that the price at which the ESOP sold its stock was *too low,* thus again disadvantaging the ESOP and its participants.

The Complaint is nothing more than a hodgepodge of speculative and conclusory allegations that fail to state a plausible ERISA claim. Even apart from its lack of merit, it should be dismissed because each of the named Plaintiffs is a party to an express agreement requiring arbitration of the claims asserted and the ESOP itself contains a provision expressly mandating arbitration of those claims. Therefore, this Court lacks jurisdiction over this matter. Accordingly, Defendants ISCO, James Kirchdorfer, and Mark Kirchdorfer (the "Kirchdorfer Defendants") respectfully request that the Court dismiss the claims for the reasons set forth below.

---

[1] The Court in *Swain* ultimately rejected their objection regarding the amount of settlement but accepted their objection regarding the scope of the release.

# BACKGROUND

## A.      ISCO, the ESOP Plan and its Termination

ISCO Industries, Inc. ("ISCO") is a privately held company headquartered in Louisville, Kentucky.  Complaint ("Compl.") ¶ 10.[2]  ISCO is a subchapter S corporation, and there is no established market on which its securities are tradable.  Compl. ¶ 10.

ISCO formed the ISCO Employee Stock Ownership Plan ("ESOP" or "Plan") in 2012.  Compl. ¶ 11; Ex. 1, Plan Doc. at 2.[3]  "The Plan is intended to be an [ESOP] within the meaning of [U.S.] Code Section 4975(e)(7) and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974."  *Id*. § 1.1.  As an ESOP under ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6), the Plan was designed to invest primarily in ISCO stock (*Id.* at § 5.1) and could do so under statutory exemptions that free the Plan's fiduciaries from ERISA's diversification requirement, the prudence standard to the extent that it requires diversification, and other ERISA limitations on the holding and sale of company stock.  *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416-17 (2014).  The stated purposes of the ESOP include sharing in the growth of the company and

---

[2] The facts in this brief are based on the allegations contained in the Class Action Complaint ("Complaint"), and are taken as true for purposes of this motion only, unless there are contradictory documents that are vital to the Complaint.

[3] Where documents attached to a motion to dismiss are vital to an analysis of the plaintiff's claims, the Court may consider them even though they are outside the pleadings.  *See Fisk v. Cigna Grp. Ins.*, No. 10-273-DLB-CJS, 2011 WL 4625491, at *2 (E.D. Ky. Oct. 3, 2011) (explaining that documents attached to a motion to dismiss are considered part of the pleadings if referred to in the complaint and are central to the allegations therein).  Where a plaintiff fails to introduce a pertinent document as part of her pleading, a defendant may introduce the exhibit as part of a motion to dismiss attacking the pleading.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (*abrogated on other grounds*)(considering a benefit plan and summary plan description submitted with the defendants' motion to dismiss).

providing for the participants' future economic security.  Plan Doc. at 1.  When the ESOP was created, ISCO reserved the right to terminate the ESOP at any time.  *Id.* § 10.2.

The ESOP's administrator under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) is the Plan Committee.  Plan Doc. § 1.4.  The Committee is appointed by the ISCO Board.  *Id.* § 8.2.  All funds contributed to the ESOP are held in trust, under the direction of a Trustee, which is appointed by the Company in accordance with a Trust Agreement.  *Id.* § 1.5.  Under the Plan document, the ESOP Trustee is responsible for holding funds contributed to the ESOP "in accordance with the terms of one or more trust agreements [] between [ISCO] and the Trustee."  *Id.* (explaining that trust agreements between the Company and the Trustee "form a part of the Plan").  From its creation until 2017, Wilmington Trust served as the trustee of the ESOP.  Compl. ¶¶ 11, 14.

Due to a number of factors and after extensive research and discussion, ISCO's independent Board members voted on August 25, 2017, to approve two resolutions.  *See Id.* ¶ 14; Ex. 2, Minutes of Special Meeting of the Board at 1 (Aug. 25, 2017).[4]  The Kirchdorfer Defendants abstained from those decisions.  *Id.*  The independent Board members resolved that is was "in the best interests of the Corporation to explore the possible redemption" of all ISCO stock (the "Proposed Transaction"), and directed ISCO's corporate officers to discuss the Proposed Transaction with the Trustee.  *Id.*  They also resolved that removal and replacement of Wilmington Trust as Trustee was "in the best interest of the Corporation," and that "Wilmington is removed as ESOP Trustee effective upon the appointment of a replacement ESOP Trustee."  *Id.*  On September 12, 2017, Defendant James replaced Wilmington Trust as Trustee and accepted full discretion and

---

[4] Central to Plaintiffs' claims are their unsupported allegations regarding the circumstances leading to the removal of Wilmington Trust and appointment of Defendant James, including reference to specific events during specific time periods.  Compl. ¶¶ 13-15.  Defendants are attaching the Minutes of Special Meeting of the Board from August 25, 2017 as Ex. 2, which are vital to understanding these allegations and the basis of ISCO's decision to terminate the ESOP.

independence to determine whether to sell the ESOP stock.  Ex. 3, Unanimous Written Consent of Directors of ISCO (Sept. 12, 2017).

### B.     Appointment of Trustee Stephen C. James to Replace Wilmington Trust

On September 18, 2017, Defendant Stephen C. James signed an engagement agreement to replace Wilmington Trust as the Plan's trustee, as well as to serve as "a discretionary trustee and independent fiduciary on behalf of the ESOP Trust with respect to the consideration of the Proposed Transaction."  Compl. ¶ 14; Ex. 4, James Engagement Agreement (Sept. 18, 2017).[5] Pursuant to that agreement, Mr. James had "complete and absolute discretionary authority in investigating, evaluating, and negotiating the Proposed Transaction in order to determine whether he will accept those terms, in accordance with applicable law, on behalf of the ESOP."  *Id.* at 1. He further agreed that he would "have to determine that the Proposed Transaction is prudent, that the purchase price in the Proposed Transaction is not in excess of 'adequate consideration,' and that the Proposed Transaction is fair to the ESOP from a financial viewpoint."  *Id.*  The agreement granted Mr. James "absolute and sole discretion . . . to engage such advisors and agents which he shall select for assistance in performing services hereunder, including without limitation, legal, financial, accounting and valuation advisors."  *Id.* at 2.

### C.     Plaintiffs and their Claims

Plaintiffs Nathan Best, Matthew Chmielewski, and Jay Hicks are former employees of ISCO and former participants in the ESOP.  Compl. ¶ 1.  They seek to represent a class of "persons who were participants in the ISCO ESOP when it sold its ISCO shares effective February 14, 2018 and/or beneficiaries of those participants."  *Id.* ¶ 20.  In this lawsuit, they allege that the ESOP's

---

[5] Trust agreements between ISCO and the ESOP Trustee are considered to "form a part of the Plan".  Ex. 1 § 1.5.  Such plan documents may be considered on a motion to dismiss.  *Weiner*, 108 F.3d at 89.

ISCO stock was sold for an amount below its fair market value and that the ESOP and its participants suffered losses as a result. *E.g. id.* ¶¶ 19, 23, 33-35, 40-41, 45. Their Complaint asserts two counts under ERISA. Under the first count, Plaintiffs allege that all Defendants breached their fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in connection with the sale of ESOP stock. The second count asserts that the same defendants violated ERISA's prohibited transaction rules (ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)) in connection with that sale. Despite Plaintiffs' claims that two separate statutory provisions were violated, both counts rest exclusively on conclusory allegations that the stock was sold for less than fair market value.

### D.    The Arbitration Agreements

In connection with their employment with ISCO, each of the named Plaintiffs signed an arbitration agreement covering a broad scope of claims, in which they agreed to resolve all claims "arising out of or relating to" their employment with ISCO, including federal statutory claims, through mandatory arbitration. Plaintiff Best agreed to "settle any and all claims, disputes or controversies arising out of or relating to [his] . . . employment . . . with ISCO Industries . . . *exclusively* by final and binding *arbitration* before a single, neutral arbitrator." Best Agreement ¶ 1 attached as Ex. 5 (emphasis in original). The Best Agreement specifically lists claims arising under federal statutory law as among those subject to mandatory arbitration. *Id.* ¶ 1. Plaintiffs Chmielewski and Hicks likewise signed arbitration agreements[6] in which they agreed to settle through mandatory arbitration "any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship" with ISCO, including, specifically, claims arising under ERISA. Chmielewski Agreement & Hicks Agreement ("Chmielewski & Hicks

---

[6] Chmielewski and Hicks signed substantially identical agreements.

Agreements") attached as Exs. 7, 8 ¶¶ 2, 4.  The Chmielewski and Hicks Agreements also include

an express waiver of class action and representative action claims.  *Id.* ¶ 6.

The ESOP plan document also contains a broad arbitration provision that applies to "[a]ny

claim made by or on behalf of a Covered Employee, Participant or Beneficiary (a "Claimant")

which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including

without limitation, . . . any claim asserting a breach of, or failure to follow, any provision of ERISA

or the Code, including without limitation claims for breach of fiduciary duty" and provides that

any such claim "shall be resolved exclusively by binding arbitration."  Ex. 6 Plan Amend. No. 2,

§ 14.1(a).  The plan document further provides that such arbitration cannot be brought on a class

or representative basis.  *Id.* § 14.1(b).  These are precisely the claims that Plaintiffs now bring to

this Court.

## ARGUMENT

### I.    Applicable Standards

A motion to dismiss based on an arbitration agreement may be brought pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of jurisdiction.  *See Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005)

(holding that "a compulsory arbitration provision divests the District Court of jurisdiction over

claims that seek benefits under an ERISA plan").[7]  A court analyzing a factual attack challenging

the existence of subject matter jurisdiction need not accept as true the complaint's factual

allegations, and must weigh any evidence properly before it.  *Ohio Nat'l Life Ins. Co. v. United*

---

[7] District courts in the Sixth Circuit are split on whether a motion to dismiss based on an arbitration agreement should be brought pursuant to Fed. R. Civ. P. Rule 12(b)(1) (for lack of jurisdiction) or Rule 12(b)(6) (for failure to state a claim).  *Powers Distributing Co. v. Grenzebach Corp.*, No. 16-12740, 2016 WL 6611032, at *2 (E.D. Mich. Nov. 9, 2016) (collecting cases applying both Rule 12(b)(1) and Rule 12(b)(6)).

*States*, 922 F.2d 320, 325 (6th Cir. 1990).

Under the Federal Arbitration Act ("FAA"), a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).  Thus, a court lacks jurisdiction and must compel arbitration when presented with a dispute between parties who have entered into a valid arbitration agreement.

Even if the Court determines it has jurisdiction, the claims must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure "to state a claim upon which relief can be granted."  When deciding a motion under Rule 12(b)(6), the Court need not accept as true legal conclusions or unwarranted factual inferences.  *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). A plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## II.    Plaintiffs' Claims Are Subject to Mandatory Individual Arbitration

All three named plaintiffs executed agreements requiring arbitration of any federal claims.

The Chmielewski and Hicks agreements explicitly require arbitration of ERISA claims, and also include a collective and class action waiver.  And the ESOP plan document, which governs the dispute here, includes both an arbitration requirement, and a bar on class actions.  In this context, the Court must enforce these agreements and dismiss the case for lack of jurisdiction.

The FAA reflects Congress's "preeminent concern" with the "enforce[ment] [of] private agreements into which parties . . . enter[]," and "that concern requires [courts to] rigorously enforce agreements to arbitrate."  *Dean Witter Reynolds, Inc.* at 221; *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quotations omitted) (reaffirming that the central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms").  Courts in the Sixth Circuit faithfully follow this "unequivocal direction" from Congress and the Supreme Court.  *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989).

The Supreme Court has repeatedly emphasized that agreements to arbitrate claims alleging a violation of a federal statute must be enforced like any other arbitration agreement absent a "contrary congressional command."  *American Express Co. v. Italian Colors Retaurant*, 570 U.S. 228, 233 (2013); *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012).  Every Circuit to consider whether ERISA claims fall under this rubric, including the Sixth Circuit, has concluded that nothing in ERISA evinces a congressional intent to preclude arbitration of ERISA claims.  *See, e.g.*, *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 932 (6th Cir. 2014) (citing *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005) (Sixth Circuit has "upheld the validity of mandatory arbitration clauses in ERISA plans"); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) ("Congress did not intend to prohibit arbitration of ERISA claims."); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1109 (9th Cir. 2019) (holding ERISA claims may be subject to

9

mandatory arbitration); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("We agree that Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir. 1993) (same); *Bird v. Shearson Lehman / Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (same); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988) (same).

The strong federal policy in favor of arbitration requires courts to resolve any doubts as to the parties' intentions under an arbitration clause in favor of arbitration. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003); *accord Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, at 627 (6th Cir. 2004); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). Indeed, there is a general presumption that arbitration is required "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Masco*, 382 F.3d at 627 (quoting *Highlands*, 350 F.3d at 576-77, and *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). The party opposing arbitration bears the burden of proving that arbitration is not required. *Masco*, 382 F.3d at 627.

In order to ensure that the federal policy favoring arbitration is properly applied, the court must engage in a limited review to determine whether the dispute is arbitrable. The Sixth Circuit follows a two-part test in making this determination: (1) that the specific dispute falls within the substantive scope of the agreement to arbitrate; and (2) that a valid agreement to arbitrate exists between the parties. *Masco*, 382 F.3d at 627. If both inquiries are answered in the affirmative, the court must require arbitration. The arbitration agreements signed by Plaintiffs meet both tests.

### A. Plaintiffs' arbitration agreements require arbitration of these claims.

The federal policy in favor of enforcement of arbitration agreements applies with full force to Plaintiffs' individual arbitration agreements with ISCO. *See Circuit City Stores, Inc. v. Adams*,

532 U.S. 105 (2001) (holding that the FAA covers employment contracts with limited exceptions not applicable to this case).

### 1.      *Plaintiffs' claims fall within the scope of the arbitration agreements.*

Plaintiffs' ERISA claims fall squarely within the broad scope of disputes that they contractually agreed to arbitrate and thus meet the first *Masco* requirement.  Plaintiff Best agreed to "settle any and all claims, disputes or controversies arising out of or relating to [his] . . . employment . . . with ISCO Industries . . . *exclusively* by final and binding *arbitration*."  Ex. 5 ¶ 1 (emphasis in original).  Plaintiffs Chmielewski and Hicks similarly agreed to settle through mandatory arbitration "any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship."  Exs. 7, 8 ¶ 2.  Their agreements expressly apply to claims under ERISA.  *Id.* ¶ 4.  Plaintiff Best's agreement also identifies, "[b]y way of example only," claims under federal statutory or common law as falling within the scope of the agreement.  Ex. 5 ¶ 1 (listing non-exhaustive ("such as") list of federal civil rights and employment-related statutes that must be arbitrated).

The broad language in the arbitration agreements is the type that courts have interpreted to be virtually all encompassing.  *See, e.g.*, *Highlands Wellmont*, 350 F.3d at 577 (claims that relate in any manner to an employment relationship or that employ "arise out of" language are, by definition, very broad, and collecting cases holding that "arising under" language constitutes a broad arbitration clause); *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983).  In the case of such broad arbitration clauses, "only an express provision excluding a specific dispute, *or 'the most forceful evidence* of a purpose to exclude the claim from arbitration', will remove the dispute from consideration by the arbitrators."  *Highlands Wellmont*, 350 F.3d at 576-77 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (emphasis added).  Here, each of the individual arbitration agreements provides for only

limited exceptions to their broad arbitration mandate, none of which apply to Plaintiffs' ERISA claims.[8]   The first *Masco* requirement is satisfied.

### 2. *The arbitration agreements are valid.*

The arbitration agreements clearly meet the second prong of *Masco*'s two-part inquiry. The Sixth Circuit has "consistently upheld the validity of pre-dispute mandatory arbitration agreements" included in employment contracts. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004); *see also Aldrich v. Univ. of Phoenix, Inc.*, 661 F. App'x 384, 390-91 (6th Cir. 2016) (affirming validity of employment arbitration agreement and upholding dismissal of case pending arbitration).   Applying Kentucky law, the Sixth Circuit recently explained that an employee demonstrates acceptance of an arbitration agreement, even without a signature, by continuing to work for an employer. *Aldrich*, 661 F. App'x at 390 (citing *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006); *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005)).   Mutual forbearance of the right to sue in an employment agreement constitutes sufficient consideration and validates an arbitration agreement. *Aldrich*, 661 F. App'x at 391 ("Clearly, the forbearance of a right to sue is valid consideration to support a promise.") (quoting *Alvey v. Union Inv., Inc.*, 697 S.W.2d 145, 148 (Ky. Ct. App. 1985)).

Plaintiffs' agreements to arbitrate are indisputably valid.   Each Plaintiff's express acceptance of the arbitration requirement is shown by his execution of the agreement and further

---

[8] *See* Ex. 5 ¶ 4 ("This Agreement . . . does not limit the Company's equitable remedies with regard to any restrictive covenants with the undersigned Employee."); Exs. 7, 8 ¶ 5 (excluding "claims for workers' compensation, unemployment compensation benefits or any other claims that, as a matter of law, the Parties cannot agree to arbitrate," as well as "claims to enforce restrictive covenants").   The Chmielewski and Hicks agreements also exclude from their agreement's scope "complaints with the State or Local Commission on Human Rights and/or the federal Equal Employment Opportunity Commission and National Labor Relations Board."   Exs. 7, 8 ¶ 5.

supported by Plaintiffs' continued employment with ISCO.  Best executed his agreement in 2004 and continued employment into 2017 and participation in the ESOP through the 2018 Transaction. Chmiewlewski and Hicks signed arbitration agreements in 2019, prior to bringing this suit.  The individual arbitration agreements are mutually binding and thus supported by sufficient consideration.[9]  Any one of these attributes suffices to demonstrate the validity of the arbitration agreements.

**B.      The Plan document requires arbitration.**

Not only do the named plaintiffs have valid arbitration agreements, the ESOP Plan document's arbitration provision separately and unambiguously forecloses this Court's jurisdiction.  Under that provision, "[a]ny claim made by or on behalf of a Covered Employee, Participant or Beneficiary (a "Claimant") which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, . . . any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, . . . shall be resolved exclusively by binding arbitration."  Ex. 6 § 14.1(a). This broad requirement to arbitrate plainly applies to Plaintiffs' ERISA fiduciary breach and prohibited transactions claims.  *See Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396 (6th Cir.2003)) ("Broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview.").

---

[9] *See* Ex. 5 ¶ 3 ("As additional consideration to this Agreement, . . . the Company agrees to submit any and all claims against the Employee to arbitration."); Exs. 7, 8 ¶ 1 ("The Parties acknowledge consideration is being provided to support the Agreement as both sides are giving up, in some cases, their respective rights to proceed outside of arbitration.").

The Plan's arbitration requirement validly binds both the Plan and Plaintiffs, who bring their claims pursuant to ERISA's civil enforcement provisions found in §§ 502(a)(2) and (3).  *See* Compl. ¶¶ 29-30, 43-44.  While the Sixth Circuit has not addressed the validity of arbitration provisions in ERISA plans, the Ninth Circuit recently found that such provisions should be honored, even when, unlike here, the plaintiff did not have a separate arbitration agreement.  The Ninth Circuit explained that claims brought pursuant to § 502(a)(2) belong to a plan, not an individual participant.  *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018).  As a result, the "relevant question is whether the Plan agreed to arbitrate the § 502(a)(2) claims."  *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513 (9th Cir. 2019).  Here, the Plan consented to arbitration when it adopted Amendment No. 2 to the Plan document on July 25, 2017.  Plan Doc. Amend. No. 2.  Plaintiffs also consented to be bound by the Plan's arbitration provision when they continued to participate in the ESOP after it went into effect.  *Dorman*, 780 F. App'x at 512 ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect.").  The Plan language alone suffices to require arbitration of the Plaintiffs' claims.

### C. The Court Should Rule that Only Individual Claims May be Arbitrated.[10]

By default, claims referred to arbitration are presumptively litigated on an individual basis. The Supreme Court has held that, because arbitration is a matter of contract, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen*, 559 U.S. at 684 (emphasis in original); *see also AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) ("[a]n agreement

---

[10] The Sixth Circuit has held that the availability of class arbitration is a "gateway question of arbitrability" for the court to decide.  *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013).

must expressly include the possibility of classwide arbitration for us to conclude that the parties agreed to it," and where an "arbitration clause is silent on the availability of classwide arbitration, [] we may not presume from 'mere silence' that the parties consented to it").

Here, nothing in either Plaintiffs' individual arbitration agreements or the Plan arbitration clause evinces an agreement to submit to class arbitration. To the contrary, the arbitration agreements that Plaintiffs Chmielewski and Hicks signed, as well as the Plan document, explicitly provide that class or representative actions are waived in arbitration. *See* Exs. 7, 8, Chmielewski & Hicks Agreements ¶ 6; Ex. 6 § 14.1(b). The Supreme Court has repeatedly upheld this type of class waiver. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *Italian Colors*, 570 U.S. at 238. While the Best Agreement does not directly address class or representative actions, the court may not presume from that "mere silence" that ISCO or the Plan consented to it, particularly in light of the Plan's specific exclusion. *AlixPartners*, 836 F.3d at 553. There simply is no "contractual basis for concluding that the part[ies] agreed" to arbitrate class or representative actions. *Stolt-Nielsen*, 559 U.S. at 684. In short, contractual principles that govern the construction of arbitration clauses dictate that Plaintiffs are limited to arbitrating claims for individual relief.

Absent express exclusion or other "forceful evidence" that Plaintiffs' claims fall outside the scope of their individual arbitration agreements and the Plan document arbitration clause, this Court must follow the terms of these agreements and compel individual arbitration. *Dean Witter*, 470 U.S. at 219 ("We conclude . . . that a court *must* compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." (emphasis added)); 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

### III. Plaintiffs Fail to Plausibly Allege that Defendants Played a Fiduciary Role in the ESOP's Termination and Sale of Stock

Even if this Court had jurisdiction, Plaintiff's claims must be dismissed under Fed. R. Civ. P. 12(b)(6).  To plausibly allege a breach of fiduciary duty, a complaint must identify a fiduciary, allege a breach, claim a loss and plead causation of the loss by the breach.  *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 770 (E.D. Ky. 2010) (stating elements of a breach of duty claim); *see also Miller v. Yazaki N. Am., Inc.*, 254 F. App'x 466, 468-69 (6th Cir. 2007) (affirming dismissal of breach of fiduciary claim brought under ERISA where plaintiff "did not prove the causation element"); *Weiner*, 108 F.3d at 88 ("A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.")  Plaintiffs fail to allege any of these elements and their claims must be dismissed.

ERISA provides that "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, [only] 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan."  *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)).  "'[U]nder this definition, a person may be an ERISA fiduciary with respect to certain matters but not others'; fiduciary status exists only 'to the extent' that the person 'has or exercises the described authority or responsibility' over a plan."  *Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.3d 1250, 1259 (2d Cir. 1987)).  "In every case charging breach of ERISA fiduciary duty, the threshold question is . . . whether [the alleged fiduciary] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  If not, then the plaintiff's "ERISA count fails to state an ERISA claim" and must be dismissed.  *Id.* at 237.

16

In defining the scope of a fiduciary's duty under ERISA, "courts have distinguished between fiduciary functions, which give rise to ERISA liability, and 'settlor' functions, which are akin to actions taken by the settlor of a trust and do not trigger ERISA liability." *Coulter*, 753 F.3d at 367; *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995). Employers, acting in their settlor capacity, are generally free under ERISA, "to adopt, modify, or terminate" welfare and pension benefit plans. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508-09 (6th Cir. 2004) (citing *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443-44, 119 S.Ct. 755 (1999)).

Plaintiffs must plead plausible facts showing that each Defendant was a fiduciary with respect to the conduct that is the basis for each fiduciary breach allegation against that Defendant. The Complaint fails to do this. Instead, Plaintiffs simply parrot the statutory definition of a fiduciary to generally allege that all "Defendants" "were fiduciaries with respect to the ESOP because they exercised authority respecting management of such plan, or disposition of its assets, and had discretionary authority in the administration of the Plan for all practical purposes." *Compare* Compl. ¶ 31; *with* ERISA § 3(21), 29 U.S.C. § 1002(21)(A) (defining "fiduciary").

The majority of Plaintiff's allegations, which concern ISCO's decision to terminate the ESOP, do not satisfy *Pegram*'s "threshold question" because Defendants plainly were not acting as ERISA fiduciaries with respect to such conduct – even assuming arguendo that they were the decision makers with respect to the corporate actions alleged in the complaint.[11]   Instead, the allegations pertain to actions for which the Kirchdorfer Defendants would have been wearing their corporate hats, because any decision to terminate the ESOP was a "pure business decision" not subject to ERISA's fiduciary requirements. *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995)

---

[11] As noted above, the Kirchdorfer Defendants abstained from voting on the August 25, 2017 Board resolutions. *See* Ex. 2.

(quoting *Sutter v. BASF Corp.*, 964 F.2d 556, 562 (6th Cir.1992)); *id.* ("An employer may []
unilaterally terminate a plan governed by ERISA without violating [ERISA].").

In *Akers*, plaintiffs challenged certain corporate board actions leading to the creation,
funding, and ultimate termination of an ESOP. The plaintiffs claimed that the founding board
members engaged in self-dealing and violated their fiduciary duties by purchasing all of the
company's outstanding shares of common stock at a price well below the fair market value, and
then initially funding the ESOP with contributions of those same shares at their fair market value.
*Id.* at 230-31. When the ESOP was terminated several years later, the founding stockholders made
a very large profit on their investment, while the ESOP merely doubled its money. The Sixth
Circuit rejected the plaintiffs' argument that the board members violated their fiduciary duties,
explaining that "a company is only subject to fiduciary restrictions when managing a plan
according to its terms, but not when it decides what those terms are to be." *Akers*, 71 F.3d at 230;
*accord Coulter*, 753 F.3d at 368 ("We see no reason to deviate from this well-reasoned analysis."
(discussing *Akers*)).

Just like this case, the board in *Akers* had "explicitly reserved to itself the discretion to
direct the trustee of the ESOP to sell the plan's shares." *Id.* at 231; *see* Ex. 1 § 10.2 ("[T]he
Company reserves the right to terminate the Plan with respect to all Employers at any time in its
sole discretion."); Ex. 9, SPD at 18 ("The Plan may be amended or terminated by the Company at
any time."). "[B]ecause the decision to terminate the [ESOP] plan was purely a business decision,
the plaintiffs failed to state an actionable claim under ERISA." *Akers*, 71 F.3d. at 232.[12]

---

[12] Because the decision to terminate the ESOP was not an ERISA fiduciary act, the Sixth Circuit
in *Akers* determined that it was "irrelevant" that the founding board members had made a
"geometric" return on their investment as a result of that termination and the sale of its stock.
*Akers*, 71 F.3d at 231.

The Sixth Circuit's decision in *Akers* makes clear that ISCO and the Kirchdorfer Defendants, wearing their corporate board hats, were not fiduciaries with respect to the decision to terminate the ESOP and the many alleged actions they supposedly took in furtherance thereof. And, with respect to the actual sale of the ESOP's stock, the transaction was structured such that the discretionary trustee alone was the fiduciary for the ESOP with decision-making authority in that transaction.   Pursuant to the authority delegated him, Defendant James alone, had discretionary authority on behalf of the ESOP to determine whether, and on what terms, the ESOP would sell its ISCO stock and, further, to determine that the transaction was in the best interests of and fair to the ESOP and its Plan participants.

Finally, the Complaint's complete silence with regard to the role of ISCO in the decisions either to terminate the ESOP or the terms on which the ESOP sold its stock betrays the obvious: ISCO is not a proper party to this litigation.  Plaintiffs' allegations barely mention ISCO.  Instead, Plaintiffs lump ISCO and the trusts[13] into a collectively defined "Kirchdorfer Defendants" and never mention either ISCO or the trusts in the remainder of the Complaint.  Compl. ¶ 7.  Plaintiffs' failure to allege how ISCO acted as a fiduciary in connection with the sales transaction requires the dismissal of the fiduciary breach claims leveled against it.  Without fiduciary status, it simply could not have committed the alleged ERISA violations.

## IV.    Plaintiffs Fail to Plausibly Allege their Underlying Claims

Not only have Plaintiffs failed to allege that the Defendants acted as fiduciaries, they also fail to plausibly allege any breaches of fiduciary duties.  They rely entirely on conclusory allegations that add up to nothing more than Plaintiffs' unsupported belief that the price the ESOP

---

[13] While not defined in the Complaint, the "trusts" appears to refer to the Trusts listed as Defendants in the caption.

participants received for their shares was simply too low.  These limited, conclusory claims fall

well short of the plausibility pleading standard articulated in *Twombly* and *Iqbal*.

### A.   Count I fails to plausibly allege Defendants breached any fiduciary duty under ERISA § 404(A)(1), 29 U.S.C. § 1104(a)(1).[14]

In Count I, Plaintiffs allege Defendants breached their fiduciary duties under ERISA

§ 404(a)(1), 29 U.S.C. § 1104(a)(1).  As their only support for this claim, Plaintiffs offer a string

of unsupported factual allegations and legal conclusions that Defendants are responsible for (1)

"causing the removal of Wilmington Trust and appointing Defendant James principally to rubber

stamp the buyback"; (2) "determining that the February 2018 ESOP Transaction was in the best

interests of and fair to the Plan and Plan participants"; (3) "causing the ESOP to sell its ISCO stock

for less than Fair Market Value"; (4) "failing to conduct a thorough and independent review and

adequately consider whether the ESOP's February 2018 sale of ISCO stock was in the best

interests of the Plan participants"; and (5) "failing to properly monitor the acts and omissions of

the Trustee or the Committee."  Compl. ¶ 34.  None of these accusations are supported by any

factual allegations, much less any plausible allegations.

At the threshold, Plaintiffs fail to plead with any specificity *what* duties these Defendants

allegedly breached.  They provide an overview of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in

paragraph 27 of the Complaint, but then fail to give Defendants notice regarding which of that

section's subparts are applicable in *this* case to *their* claims, and against *which* of the Defendants

such unspecified claims are brought.  On this ground alone, Count I should be dismissed.  While

Plaintiffs are not required to state precisely detailed factual allegations, they must provide the

---

[14] In paragraph 32, Plaintiffs state, without more, "[u]nder the 'no further inquiry rule,' the February 14, 2018 ESOP Transaction should be set aside due to Defendants conflicts of interest and violations of their duties."  It is unclear to what rule Plaintiffs are referring, and without more, Defendants are unable to respond.

factual grounds for any entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action." *Twombly*, 550 U.S. at 555.

Plaintiffs fail to plausibly support their allegation that Defendants are responsible for the removal of Wilmington Trust, much less that they breached a fiduciary duty, in replacing Wilmington Trust with Defendant James. The Complaint fails to allege facts that support any wrongdoing in replacing Wilmington Trust with Defendant James. Instead, Plaintiffs offer only pure speculation that Wilmington Trust "was replaced because of its hesitation to approve the buyback," and that James was installed to "rubber-stamp" the transaction. Compl. ¶¶ 14, 34.

There are similarly no allegations to support any lack of independence or coordination or a "rubber stamp" between the Kirchdorfer Defendants and Defendant James in setting the terms on which the ESOP sold its stock. Instead, the sole conclusory allegation is that the Kirchdorfer Defendants and James should have known that the price did not reflect fair market value. Compl. ¶ 19. This conclusory allegation fails to meet the plausibility standard in *Iqbal* and *Twombly*.

Plaintiffs further fail to allege that ISCO or the Kirchdorfer Defendants had a duty to determine, either on their own, or through review of another person's determination, that the 2018 Transaction was in the best interests of and fair to Plan participants or was for less than adequate consideration. Rather, as discussed above, ISCO and the Kirchdorfer Defendants wore their corporate hats in deciding to terminate the ESOP, and were not Plan fiduciaries in effectuating that business decision. *See Akers*, 71 F.3d at 231 (conflicts between employers and employees are inevitable and do not give rise to fiduciary duty).

The Complaint lacks any allegations regarding who determined the price of the ESOP's stock or how that price was determined. There is no support in the Complaint for Plaintiffs' implication that ISCO or the Kirchdorfer Defendants played any role in determining or approving

the sale price, much less, that they had any fiduciary role in such matters given Trustee James' sole discretion in those areas. Plaintiffs cannot plausibly allege a breach of fiduciary duty for failure to evaluate the price when they have not alleged a responsibility to do so.

Plaintiffs allegations that the ISCO stock was under-valued are purely conclusory and based entirely on a recitation of unsupported facts that Plaintiffs think leads to a conclusion that the price was too low. As the Sixth Circuit has made clear, factual allegations masquerading as mere legal conclusions will not survive the pleading standard under Rule 12. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Simply stating that the Plan was undervalued is insufficient. To plausibly support their claim, Plaintiffs were required to provide some non-speculative factual basis for their assertion. *See Twombly*, 550 U.S. at 555 (plaintiffs must allege facts sufficient to raise a "right to relief beyond the speculative level"). They did not, and this claim should be dismissed.

Finally, Plaintiffs have not set forth facts sufficient to establish a duty or a failure to monitor other fiduciaries. Plaintiffs' claim that Defendants "fail[ed] to properly monitor the acts and omissions of the Trustee or the Committee" is conclusory and must be dismissed because the complaint alleges no underlying fiduciary breach by the Trustee or the Committee. *See Benitez v. Humana Inc.*, No. 3:08CV-211-H, 2009 WL 3166651, at *11 (W.D. Ky. Sept. 30, 2009) ("It is appropriate to dismiss a failure to monitor claim when Plaintiffs fail to adequately allege any [underlying] breaches of fiduciary duty."), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459; *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 856 (S.D. Ohio 2009) (dismissing a monitoring claim because plaintiffs did not "adequately plead the existence of any underlying fiduciary breach"); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an

underlying breach of" ERISA duties).  Even if Plaintiffs plausibly alleged an underlying breach, Plaintiffs fail to allege facts supporting an inference of a deficient monitoring process.

**B.      Count II fails to plausibly allege Defendants engaged in a prohibited transaction under ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b).**

In Count II, Plaintiffs recast their fiduciary breach allegations to claim that Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b).  Compl. ¶¶ 40-41. Plaintiffs repeat their claim that Defendants caused the ESOP to sell ISCO stock for less than adequate consideration, including by failing to secure a reliable and independent appraisal of the stock's value, and by failing to ensure the ESOP was represented by an independent trustee in the sale of its ISCO shares.  Compl. ¶¶ 40-41.

Count II contains the same glaring pleading deficiency found in Count I:  Plaintiffs' prohibited transactions claim alleges violations of two statutory provisions comprising 5 potential violations without specifying which provisions they believe apply to the Defendants in *this* case. Compl. ¶¶ 37-38 (noting the various potential grounds for committing a prohibited transaction but failing to specify which applies in this case).[15]  Such a claim is "wholly deficient" and subject to dismissal because it "fails-in any way-to put the defendants on notice of the type of prohibited transaction or self-dealing complained of."  *Hollowell*, 711 F. Supp. 2d at 773 (dismissing § 406 claim where pleadings failed to identify the conduct that was allegedly prohibited under the statute).

---

[15] Plaintiffs cite generally ERISA §§ 406(a) and (b) which together include eight separate bases for violations.  Compl. ¶ 40.  Plaintiffs, however, quote only §§ 406(a)(1)(A) and (D).  *Id*. ¶ 37.

ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits a plan *fiduciary* from causing a plan to engage in certain types of transactions between a plan and a party in interest.[16]  Here, as noted earlier, the Complaint fails to plausibly allege that the Kirchdorfer Defendants or ISCO acted as fiduciaries for the ESOP in the sale of its stock, much less, that they caused the ESOP to engage in a sales transaction with a prohibited party.  As the Supreme Court made clear in *Lockheed Corp. v. Spink*, "a plaintiff must show that a *fiduciary caused* the plan to engage in the allegedly unlawful transaction.  Unless a plaintiff can make that showing, there can be no violation of § 406(a)(1) to warrant relief."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 888-889 (1996) (emphasis added).  Similarly, ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits fiduciaries from engaging in certain acts of self-dealing.  Because the Defendants did not act as fiduciaries in the transaction at issue, they cannot have engaged in a prohibited transaction.  *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 748 (6th Cir. 2010) ("Because [defendant] was not acting in a fiduciary capacity when it negotiated the rate changes at issue . . . [defendant] did not violate § 1106(b)(2)."); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 724 (6th Cir. 2000) ("[B]y its own terms, § 1106[(b)] applies only to those who act in a fiduciary capacity.").

Even apart from this threshold defect, Plaintiffs' prohibited transaction claims fail.  As with their alleged ERISA § 404 fiduciary breach claim, Plaintiffs do nothing more than parrot the language of ERISA's prohibited transaction provisions.  They do not identify how the statutory provisions were violated by these Defendants.  They fail to identify who acted on which side of the transaction and in what role – fiduciary or party in interest.  And while they acknowledge that ERISA provides an exemption for an ESOP stock purchase or sale that otherwise would constitute

---

[16] The Complaint nowhere alleges who the supposed parties in interest to the transaction were or how any Defendant fell within ERISA's statutory definition of party in interest.  *See* ERISA § 3(14), 29 U.S.C. § 1002(14).

a prohibited transaction in ERISA § 408(e)(1), they provide no support for their claim that such exemption was inapplicable other than their conclusory, self-serving assertion that the ESOP did not receive fair market value for its stock.  *See* Compl. ¶¶ 37-38, 40-41.  These allegations fall short of the minimum pleading standards articulated by the Supreme Court, and  fail to allege "sufficient factual matter" to state a plausible claim.  *Twombly*, 550 U.S. 570.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order compelling Plaintiffs to arbitrate their claims on an individualized basis, and to dismiss the lawsuit outright, or alternatively, stay the litigation pending the outcome of individual arbitration. Alternatively, the Court should find that Plaintiffs fail to plausibly state any of their claims and dismiss the entire action with prejudice.

Respectfully Submitted,

Date: July 6, 2020                                      /s/ *Theresa A. Canaday*

Theresa A. Canaday
Jason P. Renzelmann
Carrie M. Mattingly
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
T: (502) 589-5400
F: (502) 581-1087
tcanaday@fbtlaw.com
jrenzelmann@fbtlaw.com
cmattingly@fbtlaw.com

Paul J. Ondrasik, Jr. (*pro hac vice*)
Sara Pikofsky (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
T: (202) 429-6408
F: (202) 429-3902

spikofsky@steptoe.com
pondrasik@steptoe.com

*Counsel for Defendants*
*James J. Kirchdorfer, Jr., Mark*
*Kirchdorfer, and ISCO Industries, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served upon all parties of record on this 6th day of July, 2020 via the court's CM/ECF system.

/s/ *Theresa A. Canaday*