UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |
|---|---|
| NATHAN BEST, *et al.*,<br><br>                    *Plaintiffs*,<br>v.<br><br>STEPHEN C. JAMES, *et al.*,<br><br>                    *Defendants*. | No. 3:20-cv-299<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO KIRCHDORFER DEFENDANTS' MOTION TO COMPEL ARBITRATION OR TO DISMISS**

This suit alleges ERISA violations in connection with the ISCO ESOP's sale of substantially all of its assets—consisting almost exclusively of ISCO stock—back to the Company and its CEO (Defendant Jimmy Kirchdorfer) and President (Defendant Mark Kirchdorfer) in February 2018 at an artificially deflated price in a prohibited and imprudent transaction as defined by ERISA. Among other things, the Complaint alleges that the Kirchdorfers replaced the existing Plan Trustee with an inexperienced and unqualified Trustee—Defendant Stephen James—and worked to create a misleading portrait of the Company's financial condition and prospects to cause James to approve the buyback transaction at a price that, as the Kirchdorfers well knew, underpaid the Plan by at least tens of millions of dollars. The Kirchdorfers were the recipients and beneficiaries of that wrongfully underpriced transaction. As expressly provided by ERISA and corresponding Supreme Court authority, this suit seeks to redress harm to the Plan as a whole as a result of that transaction.[1]

---

[1] The Kirchdorfers incorrectly state that this suit is driven by Plaintiffs' disappointment with the class settlement in previous litigation in Delaware. Plaintiffs here, among others, objected to that settlement

1

Mr. James has answered the Complaint. The Kirchdorfer Defendants[2] have moved to compel arbitration or in the alternative to dismiss for failure to state a claim. The Kirchdorfer Defendants attempt to invoke arbitration provisions in the three named Plaintiffs' employment agreements. All three named Plaintiffs joined ISCO before the Plan was even formed, and the arbitration provisions in their employment agreements, by their terms, have no application here. As detailed below, the claims here do not relate to or arise from their employment: Plaintiffs can prove their claims without making any reference to the terms or conditions of their employment. *See* Part I, below.

Indeed, cognizant that those arbitration provisions do not apply to ERISA claims relating to the Plan's sale of stock to insiders at an artificially deflated price, the Kirchdorfer Defendants hastily attempted to insert an arbitration provision into Plan documents by amendment in late July 2017. They did so in order, as a practical matter, to shield themselves from any meaningful liability just as they commenced their buyback scheme—continuing their constant overreach. But that provision is ineffective and

principally on the grounds that the scope of the proposed release was overbroad, purporting to release claims not even remotely at issue in that litigation—including the claims brought here. *See Swain v. Wilmington Trust,* No. 17-C-71 (D. Del), ECF No. 111. Although the Delaware litigation concerned *only* a 2012 transaction at the formation of the ESOP, the settlement release, as initially proposed, released all claim relating to the 2018 transaction, including claims against Steve James, who was a stranger to the ESOP until 2017, and the Kirchdorfers, who were not parties to the Delaware litigation.

In light of those objections, and the indefensible overreach reflected in the scope of the proposed release, the settlement was amended to limit the scope of the release, and Plaintiffs and the other objectors withdrew their objections. *Id.,* ECF No. 124, 6/5/20 Tr. at 6. The Delaware District Court acknowledged that the Objectors had "done a service" by bringing their objections (*id.* at 7), effectively forcing an amendment to the settlement agreement. The Kirchdorfers' assertion to this Court (ECF No. 45 at n.1) that the Delaware District Court overruled the objections is demonstrably incorrect. Although credibility is not an issue in this procedural context, the Kirchdorfers' misstatement on this point should color their other numerous "representations" of "fact" outside the pleadings in their motion, which should be disregarded at this stage in any event. Likewise, without any authenticating or marshalling affidavit, the attachments to the motion are to be ignored as a matter of law, which necessitates summary denial of the portions of the motion seeking to compel arbitration. *See Harris v. City of St. Clairsville,* 330 F. App'x 68, 79 (6th Cir. 2008) (affirming district court's decision to strike unauthenticated exhibits and decide motion without considering them).

[2] Plaintiffs refer to ISCO, James Kirchdorfer, and Mark Kirchdorfer as the Kirchdorfer Defendants because the Kirchdorfers directly or indirectly now own all ISCO stock and comprise the majority of its officers.

unenforceable. Plaintiffs had no actual notice of those amendments, did not expressly assent to them under Kentucky law, and received no consideration for them. Even if they had, the provisions are unenforceable under ERISA. *See* Part II, below.

Finally, the Complaint more than suffices to put the Kirchdorfer Defendants on notice of the conduct they must defend, and that conduct, as alleged, violates Sections 502 and 406 of ERISA. *See* Part III, below.

The Kirchdorfer Defendants' motion should be denied.

**Statement of Undisputed Facts in Opposition to Motion to Compel Arbitration.[3]**

1.      Plaintiff Nathan Best began working for ISCO in 2004. He executed an arbitration agreement in 2004 stating that "I will settlement any and all claims … arising out of or relating to my candidacy for employment, employment and/or cessation of employment with ISCO" by arbitration. ECF No. 45-5. That agreement "represents the entire understanding of the parties with respect to its subject matter. No amendment to this Agreement shall be effective unless in writing and signed by all parties." *Id.* There is no record evidence that Mr. Best ever signed any other writing relating to arbitration.

2.      Plaintiffs Matthew Chmielewski and Jay Hicks began working for ISCO in 2011. They executed documents entitled "Mutual Intent to Arbitrate Employment-Related Disputes" that provide that "this Agreement will govern resolution of all disputes … arising out of or relating to the Parties' employment relationship or

---

[3] As detailed further below, courts apply the summary judgment standard to a movant seeking to invoke an arbitration provision when the movant, as here, submits matters outside the pleadings. *Weddle Enters., Inc. v. Treviicos-Soletanche*, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014); *Triple Crown Holdings, LLC v. Lowe's Home Centers, LLC*, 2019 WL 3321725, at *3 (E.D. Ky. July 24, 2019). Accordingly, the Kirchdorfer Defendants must show that the undisputed facts establish as a matter of law both (1) the existence of an enforceable agreement to arbitrate and (2) that the particular claims at issue are within the scope of the agreement.

termination of that relationship." Those agreements likewise provide that they "can only be modified in writing signed by both parties." There is no record evidence that either Mr. Chmielewski or Mr. Hicks ever signed any other writing relating to arbitration.

3.       ISCO established the Plan in 2012. *See* ISCO Industries, Inc. Employee Stock Ownership Plan ("2012 Plan"). ECF No. 45-1.

4.       In July 2017, the ISCO Defendants purported to amend the Plan to add an arbitration provision. ECF No. 45-6. There is no record evidence that Plaintiffs received actual notice of the amendments or that they expressly assented to them. There likewise is no record evidence that they received additional contributions to their accounts after the amendment.

5.       The arbitration clause in the Plan, as amended, provides in relevant part (ECF No. 45-6):

**Section 14.1 Arbitration Requirement and Procedure**.

**(a)       Covered Claims**. Any claim made by or on behalf of a Covered Employee, Participant or Beneficiary (a "Claimant") which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, any claim for benefits under the Plan, Trust Agreement, or Trust; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be resolved exclusively by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect….

**(b)       No Group, Class, or Representative Arbitrations**. All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant…. In the event a court or

arbitrator of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (*i.e.,* all of this Section 14) shall be rendered null and void in all respects.

*   *   *

6.  ISCO "reserve[d] the right to amend the Plan from time to time in its sole discretion" subject to certain limitations that do not apply to the arbitration clause. ECF No. 45-1 § 10.1. No amendment may "eliminate or reduce a Participant's accrued benefit." *Id.*

7.  In August and September 2017, weeks after adding the foregoing arbitration provision, the Kirchdorfer Defendants announced a decision (made earlier) to replace the Plan Trustee, buy back ISCO's stock from the Trust, and terminate the Plan. ECF No. 45-2, 45-3. The Plan terminated in February 2018. ECF No. 45 at 3.

## ARGUMENT

"[N]o matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005). Thus, a court should carefully review an arbitration agreement to determine whether it applies to the parties and the claims. *Id.* at 775–76 (holding text of arbitration agreement did not apply to all claims alleged by plaintiff). The mere existence of an arbitration clause does not mean *both* that the plaintiff agreed to it *and* that its terms automatically command arbitration of all claims.

When evaluating an arbitration agreement, the Court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; (3) whether Congress intended the federal statutory claims at issue to be non-arbitrable. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). A motion to dismiss based on the existence of a valid arbitration

agreement is not evaluated under Rule 12 standards. Instead, courts apply the standard applicable to motions for summary judgment where, as here, matters outside the pleadings are submitted. *Weddle Enters., Inc. v. Treviicos-Soletanche*, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014); *I3 Triple Crown Holdings, LLC v. Lowe's Home Centers, LLC*, 2019 WL 3321725, at *3 (E.D. Ky. July 24, 2019).

The issue of whether the parties are contractually bound to arbitrate is determined under the contract law of the Commonwealth of Kentucky. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007); ECF No. 45-1, 2012 Plan § 12.5(g).[4] Generally applicable state law contract defenses such as lack of assent or lack of consideration may render a purported arbitration provision unenforceable. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

The question presented by the Kirchdorfer Defendants' motion is not whether an arbitration clause in the abstract may compel arbitration of ERISA claims. Rather, the question is whether *these* arbitration clauses as written compel arbitration of *these* Plaintiffs' claims as pleaded. As set forth below, none of arbitration provisions here dictates arbitration of these claims.

## I.   The Employment Agreement Arbitration Provisions Do Not Apply.

This suit concerns whether plan fiduciaries discharged their fiduciary duties in selling to themselves the Plan's stock at a deficient price. At issue is a transaction having nothing to do with Plaintiffs' employment. The claims do not "aris[e] out of or relat[e] to [Mr. Best's] candidacy for employment, employment and/or cessation of employment,"

---

[4] *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n. 6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified"); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law whenever possible .... [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary").

nor, in the instances of Messrs. Chmielewski and Best, do they "aris[e] out of or relat[e] to the Parties' employment relationship or termination of that relationship."

To determine whether a specific dispute arises out of or relates to a relationship or agreement, courts examine whether the action could be maintained without reference to the contract or relationship at issue. *Matalka v. Home Point Financial Corp.*, 753 Fed. Appx. 372, 375 (6th Cir. 2018) (affirming denial of motion to compel arbitration); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003). A dispute falls outside the scope of an agreement if the "action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003); *Imagetec, L.P. v. Lexmark Int'l*, 2019 WL 4739686, *12 (W.D. Ky.) (denying motion to compel arbitration). Where there are multiple agreements between the parties, the Sixth Circuit "has adopted a more narrow test of arbitrability, examining which agreement determines the scope of the contested obligations" and has "rejected the view that a dispute is arbitrable merely because it touches on matters covered by the arbitration clause." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007); *Dental Assocs., P.C. v. Am. Dental Partners of Michigan, LLC*, 520 F. App'x 349, 351–52 (6th Cir. 2013) (affirming denial of motion to compel arbitration where dispute could be resolved without reference to agreement containing arbitration provision).

Under those standards, the employment agreement arbitration provisions—all of which predate the formation of the Plan—have no application here. As noted above, Plaintiffs can prove their claims without making any reference to their employment with ISCO. Indeed, the Complaint contains no allegations bearing on the fact that Plaintiffs are former ISCO employees, precisely because that fact has nothing to do with the claims. The

claims concern Defendants' conduct in relation to the Plan—not in relation to anyone's employment.

The reality that the employment agreement arbitration provisions have no application here is confirmed by the Kirchdorfer Defendants' own actions: If they believed those arbitration provisions actually applied here, they would have had no need to try to amend the Plan in an attempt to insert an arbitration provision in the Plan documents as, for all intents and purposes, a liability shield just as they launched the process to buyback the stock.[5] Regardless of any policy favoring construction of ambiguous arbitration provisions, courts should not "reach a result inconsistent with the plain language of the contract." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "No matter how strong[ly] the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration. *Simon*, 398 F.3d at 765. Here, the employment agreement arbitration provisions cannot be read to reflect an agreement that claims concerning the Plan's sale of stock to insiders are subject to arbitration.

## II.     The Plan Arbitration Provision Is Ineffective and Unenforceable.

### A.     The Record is Devoid of Evidence That Plaintiffs Were Notified of the Amendment and Assented to It.

The FAA was not enacted to "require parties to arbitrate when they have not agreed to do so" because "[a]rbitration under the Act is a matter of consent, not coercion." *Volt Info. Sciences v. Bd. of Trs.*, 489 U.S. 468, 478–79 (1989). Consent is "the

---

[5] Given the ubiquity both of arbitration provisions in employment agreements and of ESOPs, it is notable that the Kirchdorfer Defendants cite not a single case in which a court has compelled arbitration of ERISA claims concerning an ESOP on the basis of an arbitration provision in an employment agreement.

first principle that underscores all" Supreme Court arbitration decisions. *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010).

As noted above, whether Plaintiffs agreed to arbitrate is a question of Kentucky law—not ERISA or FAA law. Defendants have the burden to show that Plaintiffs manifested assent *to the arbitration amendment* following receipt of notice. *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 910 (Ky. 2014) ("there is no question that the party seeking to enforce an agreement has the burden of establishing its existence"). In particular, as a matter of Kentucky law, for a party to be bound by an arbitration agreement, "[a]ssent to be bound by the terms of the agreement must be expressed, and simply acknowledging the receipt of the document does not constitute assent to be bound." *Id.* at 905 ("if [plaintiff] had acknowledged receipt of the booklet [containing arbitration provision], that alone would not establish assent to be bound by material contained in the booklet alone. But he denied even getting the booklet, which makes the possibility of any kind of assent even more remote"). Plaintiffs cannot have reached a "meeting of the minds" with ISCO and agreed to arbitrate without having actual notice of the arbitration policy and expressly agreeing to it terms. *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193, 199 (Ky. 2002).[6]

---

[6] Other courts have declined to enforce plan amendments requiring arbitration given lack of notice and assent. *E.g., Brown v. Wilmington Tr., N.A.*, 2018 WL 3546186, at *4 (S.D. Ohio July 24, 2018) (denying motion to compel arbitration in ERISA/ESOP case because the plaintiff did not agree to arbitrate); *Casey v. Reliance Tr. Co.*, 2019 WL 7403931, at *21 (E.D. Tex. Nov. 13, 2019) ("The issue of whether Plaintiffs received notice of (or assented to) the 2018 Amendment goes to the threshold issue of whether an arbitration agreement was ever formed"). While those cases involved plan amendments added after plaintiffs' employment had ended, as explained in *Casey*, the fundamental question of contract formation in this context is whether the plaintiffs have received notice of the plan amendment—at any time—such that they could possibly have agreed to the plan amendment prior to the litigation. *Casey*, 2019 WL 7403931, at *35. Likewise, here, there is no record evidence that Plaintiffs received notice of the plan amendment before filing this lawsuit and there is no record evidence of express assent as required by Kentucky law.

Indeed, the Kentucky Supreme Court recently refused enforcement of an arbitration agreement where parties had acknowledged the arbitration provision in writing but had not expressly assented to it. *Dixon v. Daymar Colleges Grp., LLC*, 483 S.W.3d 332, 346 (Ky. 2015) ("Assent to be bound by the terms of an agreement must be expressed, and simply acknowledging the receipt of the document does not constitute assent to be bound"). Here, there is no evidence that Plaintiffs were given notice of the plan amendment, much less that they expressly assented to the arbitration provision. As a matter of Kentucky as reflected in *Dixon*, the Kirchdorfer Defendants' motion fails because they have not established as a matter of undisputed fact that the arbitration clause was offered to and accepted by Plaintiffs.

Although assent may be implied under some circumstances, it is essential for there to be an "offer" and "acceptance." *Hergenreder v. Bickford Senior Living Grp.*, LLC, 656 F.3d 411, 418 (6th Cir. 2011). Where there is no basis to conclude that Plaintiffs ever were alerted to the plan amendment arbitration provision or acknowledged it, they cannot possibly be found to have assented to it. Moreover, the Court must credit that the parties previously had agreed that any changes to their agreement concerning arbitration must be in a signed writing, and there is no such signed writing here to expand their agreement beyond employment-related claims to cover the claims here concerning the plan's sale of stock. (*See* Statement of Undisputed Facts ¶¶ 1–2, *supra*).

Any suggestion that by fiat *the Plan* assented to the amendment, and so Plaintiffs must live with it, is belied by the Kirchdorfer Defendants' motion (which reflects that the only party that agreed to the amendment was ISCO (ECF. No 45-6 at 7)) and in any event is insufficient as a matter of Kentucky law (which requires a party to be bound to

have expressly assented). *See also Brown*, 2018 WL 3546186, at \*5 (denying motion to compel arbitration in ESOP case, finding persuasive argument that "Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty 'would, in a sense, be allowing the fox to guard the henhouse.'").[7]

### B.    The Plan Arbitration Provision Lacks Any Consideration.

Consideration is an essential element of every contract. A promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof. *Day v. Fortune Hi-Tech Mktg., Inc.*, 2012 WL 4049479, at \*2 (E.D. Ky. Sept. 13, 2012), *aff'd*, 536 F. App'x 600 (6th Cir. 2013). Consideration for the plan arbitration provision is lacking because: (*i*) the Plan remains subject to amendment at all times in the Kirchdorfer Defendants' sole discretion, (*ii*) there is no mutuality of obligation of any kind.

An arbitration contract that permits an employer to amend or terminate the arbitration program at any time lacks consideration and is unenforceable. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir 2003). Stated differently, where one party to a contract reserves the unfettered and unilateral right to determine whether it will perform under the arbitration clause, the agreement is illusory. *Id.*

Under the same circumstances as here, in a decision the Sixth Circuit affirmed,

---

[7] To the extent the Kirchdorfer Defendants contend that the Plan agreed with itself to the arbitration amendment, which as a practical matter, if enforced, would destroy the Plan's ability to be made whole for any fiduciary misconduct—and that Plaintiffs are bound by that—any such agreement would be invalid as unconscionable. *See Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W. 3d 828, 835 (Ky. 2013). Procedural or unfair surprise unconscionability pertains to the process by which an agreement is reached. *I3 Triple Crown Holdings*, 2019 WL 3321725, at \*5 (E.D. Ky. July 24, 2019). Here, Plaintiffs were not part of any such process; rather, ISCO apparently agreed with itself to amend the Plan to insert an arbitration clause just before the scheme at issue in this case commenced for the sole purpose of creating a liability shield. ECF 45-6 at 7. Moreover, substantively, no entity in its right mind would agree to the practical elimination of its principal remedy, in exchange for nothing.

Judge Coffman found that an arbitration provision in an agreement was not enforceable where the party seeking to enforce the provision retained sole discretion to amend the agreement: "By retaining the right to amend the documents 'in its sole and absolute discretion,' Defendant has no binding obligation to arbitrate." *Day*, 2012 WL 4049479 at *2. Judge Coffman further noted that the presumption in favor of arbitration does not apply to the issue of whether an enforceable arbitration agreement was formed. *Id.* at *1. Because the Plan here remained subject to amendment at any time in the Kirchdorfer Defendants' sole discretion, under *Day* and Kentucky law, the Kirchdorfer Defendants cannot enforce the arbitration provision.

Indeed, the absence of consideration for the amendment is underscored by the reality that only "claimants"—participants—are required to arbitrate their claims. Thus, although Kentucky has recognized that a *mutual* agreement may satisfy the requirement of consideration, *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013), no such provision exists here—and even it did, it would remain subject to the Kirchdorfer Defendants' absolute discretion to amend it, rendering it ineffective.

## C.    The Arbitration Clause Violates 28 U.S.C. § 1109.

"It is well-established that a party does not forgo the substantive rights afforded by a statute when she agrees to arbitrate a statutory claim but only submits to their resolution in an arbitral, rather than a judicial, forum." *Morrison*, 317 F.3d at 670 (citations and punctuation omitted). "The critical question is not whether a claimant may obtain some amount of the entire range of remedies under [the statute], but whether the limitation on remedies at issue undermines the rights protected by the statute." *Id.*; *see also Southerland v. Corp. Transit of Am.*, 2014 WL 4906891, *9 (E.D. Mich. Sept. 30, 2014) (arbitration clause

12

cannot waive statutory rights and remedies). That is because arbitrability of federal statutory claims "rests on the assumption that the arbitration clause permits relief *equivalent* to court remedies." *Morrison*, 317 F.3d at 673 (emphasis added) (quotations and citations omitted). Thus, for example, the Sixth Circuit has invalidated arbitration clauses that barred punitive damages claims in Title VII cases, reasoning that this impaired statutory remedies and diminished the deterrent effect of large damages awards. *Morrison*, 317 F.3d at 670-73.

The statute here, ERISA, authorizes one plan participant to sue a fiduciary in violation of ERISA to "make good to [a] plan *any losses to the plan* resulting from each such breach, and *to restore to such plan any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary...." ERISA § 409(1), 29 U.S.C. § 1109(1) (emphasis added). This remedy allows a single participant to recover *all* plan losses because, as the Supreme Court has found it "abundantly clear," ERISA's congressional draftsmen "were primarily concerned . . . with remedies that *would protect the entire plan*, rather than with the rights of an individual beneficiary." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–42 (1985) (emphasis added); 29 U.S.C. §§ 1109, 1132(a)(2). Any limit on these plan-wide remedies greatly diminishes the statute's remedial goals and deterrent effect and should be rejected. *See Morrison*, 317 F.3d at 672–73 (arbitration caps on damages frustrate statute's remedial goals and undermine deterrent purpose of potentially large damages awards).

To achieve Congress's "primary" objectives of preventing the "misuse and mismanagement" of retirement plan assets and providing "remedies that would protect the entire plan," ERISA § 409 provides for recovery of losses that "inure[] to the plan as a

whole." *Massachusetts Mut.*, 473 U.S. at 142–43; *see Bryant v. Int'l Fruit Prod. Co.*, 886 F.2d 132, 135 (6th Cir. 1989) ("As the language regarding fiduciary duty suits in section 1109 makes clear, ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan"); *Hamilton v. Conn. Gen. Life. Ins. Co.*, 799 F. Supp. 828, 831 (S.D. Ohio 1992) (same); *In re AEP ERISA Litig.*, 2009 WL 3854943, *2 (S.D. Ohio Nov. 17, 2009) (same). Congress also acted to prohibit "transactions which offered a high potential for loss of plan assets or for insider abuse," such as those alleged here. *Chao v. Hall Holding Co.*, 285 F.3d 415, 439 (6th Cir. 2002). Indeed, the abuses are so prevalent in the ESOP sector that the Department of Labor has made ESOPs a national enforcement project.[8] The recovery of plan damages far beyond an individual participant's damages is a critical remedial feature supporting ERISA's goal to fully protect plan assets.

ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). A plan term that allows an ESOP fiduciary to escape liability for "any losses to a plan" arising from the fiduciary's violations of ERISA that allowed the ESOP to be bilked tens of millions of dollars falls squarely within the statute. *See* 29 U.S.C. § 1109(a) (defining fiduciary's liability for "any losses to the plan resulting from each such breach" of ERISA); 29 U.S.C. § 1132(a)(2) (allowing participants to seek § 409 relief to their plans); 29 U.S.C. § 1110(a) (prohibiting exculpatory provisions). The Kirchdorfer Defendants are not

---

[8] *See* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement; Frank (Chip) Brown, *Q&A with Tim Hauser of the U.S. Department of Labor*, Insights at 75 (Spring 2015), http://www.willamette.com/insights_journal/15/spring_2015_8.pdf.

14

permitted under the statute to limit their fiduciary liability and stymie an action for statutory relief to a plan recognized by the Sixth Circuit in a private company ESOP case like this.[9]

To be clear, Plaintiffs do *not* contest that an arbitration agreement can bar class and collective actions. Rather, Plaintiffs argue that the arbitration clause cannot bar a representative action for the Plan under ERISA § 502(a)(2) for the relief in § 409. Thus, assuming the arbitration clause prohibited only class and collective actions and Plaintiffs remained free to sue for "any" losses to the Plan in arbitration (and assuming the agreement and that the clause were otherwise valid and enforceable, and the Court overlooked the amendment provision invalidating the entire Section 14 if any of Section 14.1(b) is unenforceable), Plaintiffs' claims could be sent to arbitration.

Congress and the Supreme Court mandate a representative action for relief to the plan and prohibit individualized actions for individual relief. Accordingly, the Arbitration

---

[9] The Kirchdorfer Defendants ignore this law, and instead rely on *Dorman v. The Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019), a case that conflicts with the law of the Supreme Court and this Circuit and others holding that in private-company ESOP litigation the available statutory relief is *any plan losses*. *Dorman* offers a cursory and truncated two-sentence analysis of the complex issues presented. Moreover, it was designated (at the unnumbered footnote) as "not appropriate for publication and . . . not precedent" except for limited exceptions that would not apply even if this case were in the Ninth Circuit.

Even if it could be considered, it is readily distinguishable from this case: The defendants in *Dorman* had not amended the ESOP plan in a manner that provided a reasonable inference of an effort to insulate the defendants from ERISA liability for an impending transaction. *See id.* at 513 (distinguishing *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)); *Compare* ECF No. 45-6 at p. 7 (arbitration agreement added on July 25, 2017) *with* Mot. at p. 4 (conceding that weeks later in August 2017, Defendants began the buyback scheme). If the *Dorman* holding were applied, the arbitration clause would relieve Defendants from the "responsibility or liability" intended by Congress and defined by ERISA § 409(a). *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (explaining under § 409 "the potential personal liability of the fiduciary is 'to make good to such plan any losses to the plan ... and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan'"); *LaRue v. DeWolff*, 552 U.S. 248, 256 (2008) (ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries").

The *Dorman* court also based its holding on evidence that the plaintiff in *Dorman* had actively participated in the ESOP plan following the amendment for nearly a year, citing *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 722 (9th Cir. 2000), where the plaintiff "underwent surgery and related medical treatment, and he thereafter submitted his medical bills to the [ERISA] Plan for payment." Here, as noted above, there is no evidence that any of the Plaintiffs actively participated in the Plan following the amendment. Indeed, Defendants decided to terminate the Plan shortly after adding their arbitration clause, and no additional contributions were made to the Plan after the amendment. Compl. ¶ 18.

Procedure in the plan amendment providing for the exact opposite is illegal and void. The Arbitration Procedure plainly prevents Plaintiffs from "vindicating" their "statutory cause of action in the arbitral forum." *Smith Barney*, 80 F.3d at 1084. Therefore, it is unenforceable and invalid.

### D.    The Arbitration Clause Violates ERISA's Anti-Cutback Rule.

The arbitration clause imposes a new condition to participants' receipt of benefits: to pursue a Covered Claim, the Claimant must comply with the Arbitration Procedure.[10] When this clause was added to the Plan in 2017, participants already had accrued contributions in their Plan accounts, and therefore the purported "consideration" in the form of continued participant status were already theirs. Still, the Kirchdorfers argue that the new condition in the arbitration clause applies to Plan participants, including Plaintiffs.

The clause violates ERISA's anti-cutback rule and should be held void. *See* ERISA § 204(g), 29 U.S.C. § 1054(g). ERISA provides: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." ERISA § 204(g). ERISA defines "accrued benefit" in relevant part as: "in the case of a plan which is an

---

[10] Further, in an effort to shield liability and intimidate and further thwart plan participants' pursuit of the very remedies that Congress and the Supreme Court have authorized—relief on behalf the plan—the plan amendment provides that any participant who unsuccessfully challenges the enforceability of the arbitration provisions is to pay defendants' legal fees in connection with the challenge. Section 14.2. ERISA § 502(g), however, provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The Supreme Court requires that a party must achieve some degree of success *on the merits* in order to receive fees in an ERISA action. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A purely procedural victory does not qualify. *Id.* Further, courts have repeatedly held that ERISA's carefully reticulated statutory scheme precludes remedies not set forth in the statute. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (noting that ERISA provides an explicit attorney's fee remedy). Prevailing on a motion to compel arbitration is not "some degree of success on the merits." Rather, it is a purely procedural victory. Therefore, the fee-shifting provision in Section 14.2, like the bulk of Section 14, is void. *Cf. Almoudheji v. Automobiles of Sw. Houston, LP*, 2020 WL 1987492, at *3 (S.D. Tex. Apr. 24, 2020) (arbitration clause limiting attorneys' fees under FSLA is invalid).

individual account plan, the balance of the individual's account." ERISA § 3(23), 29

U.S.C. § 1002(23). Under 26 C.F.R. § 1.411(d)-3(a)(l), "a plan amendment includes any

changes to the terms of the plan." Accrued benefits are considered "decreased" for

purposes of ERISA § 204(g) not only when they are reduced in size or eliminated

entirely, but also when the plan imposes new conditions or materially greater restrictions

on their receipt. *See Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746–47 (2004);

*Battoni v. IBEW Local Union No. 102 Emp. Pension Plan*, 594 F.3d 230, 234–37 (3d Cir.

2010); 26 C.F.R. §§ 1.411(d)-4, Q-7, A-7. The arbitration clause threatens participants'

receipt of benefits that already accrued prior to the 2017 Plan amendment, and it purports

to place new conditions on them. For these reasons it cannot be enforced, and it should

be declared void.

**III.    The Complaint States Claims Against ISCO, Jimmy Kirchdorfer, and Mark Kirchdorfer.**

The Complaint identifies acts that ISCO and each of the Kirchdorfers undertook as

*fiduciaries* and as "other persons" that constitute violations of ERISA § 502(a) and (b) and §

406(a) and (b). In particular, the Complaint alleges that the Kirchdorfers and ISCO, while

effectively controlling the Plan, caused the removal of Wilmington Trust given its resistance

to the buy-back transaction—its refusal "to serve as discretionary trustee in accordance with

a possible Redemption" (ECF No. 45-2)—and selected an unqualified and inexperienced

replacement to "protect" the Plan's interests.[11] Compl. ¶ 14. The Complaint alleges that

---

[11] The attachments to Defendants' motion make clear that ISCO, Jimmy Kirchdorfer, and Mark Kirchdorfer in fact replaced Wilmington Trust with Steve James and did so at least in part because Wilmington would not go along with the buyback. ECF No. 45-3, 45-4. Moreover, the self-serving PowerPoint presentation (ECF No. 45-2) will be shown to be pretext—with Jimmy Kirchdorfer having well before that presentation determined to terminate the ESOP to take the stock back as the Company was entering very favorable economic conditions. In any event, termination of the ESOP would not be an issue if in fact the transaction had been undertaken consistent with Defendants' fiduciary obligations, including payment of fair value to the Plan for its stock. Defendants' effort to introduce self-serving exhibits in a lopsided effort to introduce "facts" in support of their

Jimmy Kirchdorfer forced reductions in 2018 financial forecasts specifically to drive down the price at which he and his brother and their trusts would purchase back the stock of the company. *Id.* ¶¶ 15, 17. The Complaint alleges that the Kirchdorfers knowingly paid less for the stock that had been allocated to participant accounts than for stock that had not been. *Id.* ¶ 16 & n.1.The Complaint alleges that the Kirchdorfers orchestrated a valuation based on year-end 2017 results, despite that the transaction did not occur until February 14, 2018, and the interim results would have dictated a substantially higher per-share price. *Id.* at ¶ 18. The Complaint alleges that the Kirchdorfers failed to alert James to a one-time financial event in December 2018 that should have been "backed out" of any valuation based on a multiple of trailing twelve months EBITDA. *Id.* The Complaint alleges that Defendants failed to allocate stock to the plan at year-end 2017 despite that the plan remained in force until mid-February 2018. *Id.*

The Kirchdorfer Defendants argue that there is no support in the Complaint for Plaintiffs' "implication" that the Kirchdorfer Defendants "played any role in determining" the sale price and that allegations that the stock price was too low are "purely conclusory." Mot. 21 and 22.[12] In fact, the Complaint specifically alleges that Jimmy Kirchdorfer played an active role in developing misleadingly pessimistic financial forecasts, knowing that those forecasts would be used in determining the sales price. Moreover, in direct conflict with

---

Motion to Dismiss should be summarily rejected by the Court—there is no basis to consider meeting minutes, PowerPoint presentations, and the other documents attached to Defendants' Motion where Plaintiffs' Complaint *must* be taken as true at this stage of the proceedings, and Defendants have failed to authenticate any of the "evidence" they have submitted.

[12] ISCO repeatedly invokes the *Twombly/Iqbal* standard for the notion that Plaintiffs are required to "support" their allegations. *E.g.* Mot. at 20. In fact, still grounded in Rule 8's minimal standards, *Twombly* and *Iqbal* only require a plaintiff to "plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). Where plaintiffs state "simply, concisely, and directly events that ... entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low").

their argument that the Plaintiffs' allegations are "purely conclusory," ISCO has filed a separate lawsuit in state court against a former employee it believes provided information included in the Complaint here. The state court complaint, verified by Jimmy Kirchdorfer, contends that the Complaint in this Court contains too much specific factual, confidential, and proprietary information.[13] Defendants also moved in this Court to *seal* the Complaint, which is totally unjustified under Sixth Circuit standards for restricting public access if, as Defendants now contend, the Complaint contains nothing but legal conclusions and "purely" conclusory allegations. *See* ECF No. 41 (Motion to Seal). Accordingly, the Kirchdorfer Defendants should be estopped from both complaining in state court (and in this Court) that the allegations here contain too many specific facts and at the same time arguing that the Complaint is "purely conclusory" and lacks enough specific, factual allegations. *See Leasure v. AA Advantage Forwarders,* 2007 WL 925829, at *17 (W.D. Ky. Mar. 23, 2007), *aff'd,* 276 F. App'x 438 (6th Cir. 2008).

The Kirchdorfer Defendants also argue that the Complaint lacks sufficient factual detail concerning their failure to monitor other fiduciaries—namely Steve James—or predicate breaches by other fiduciaries. Mot. at 20–21. In reality, the Complaint alleges that the Kirchdorfer Defendants selected James because he was unqualified (and articulates why he was unqualified), then specifically misled James about the company's financial prospects, and knew or should have known that James undertook no real independent investigation into the value of the Company, by, for instance, interviewing sales personnel or others in the Company. Compl. ¶¶ 14–19.

---

[13] *See ISCO Indus., Inc. v. O'Neill*, 20-CI-3079 (Jefferson Cir. Ct., Ky.). Chief Circuit Judge Angela McCormick Bisig denied ISCO's motion for a temporary restraining order in that matter, finding it unlikely that ISCO could prevail on the merits. That suit is emblematic of the Kirchdorfers' constant overreaching.

Because none of those actions can be squared with fiduciary duties—the utmost duty in law, *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001)—the Kirchdorfer Defendants also contend that they were under no fiduciary constraints in connection with buying back the stock at far less than its value because those actions were ministerial, or undertaken while wearing a "corporate hat," and not discretionary. Mot. at 16–19. That argument fails. Anyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because Congress intended that term to be interpreted broadly. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 (1993). "'Fiduciary' should be defined not only by reference to particular titles, such as trustee, but also by considering the authority which a particular person has or exercises over an employee benefit plan." Thus, 'fiduciary' should be defined not only by reference to particular titles, such as 'trustee' but also by considering the authority which a particular person has or exercises over an employee benefit plan." *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) (affirming summary judgment determination that individual who brought "considerable influence" to bear on plan activities owed fiduciary duties).

The Complaint here alleges that the Kirchdorfer Defendants had and exercised complete control over the ESOP (Compl. ¶¶ 6–7), and "conclusory" or not, that suffices. *See Senior Lifestyle Corp. v. Key Benefit Administrators, Inc., ,* 2017 WL 5483161, at *3 (S.D. Ind. Nov. 15, 2017) ("the question of fiduciary duty boils down to the specific discretion that a person or entity has over the administration or management of a plan. As such, this is a factual question about the specific relationship involved in the dispute that should not be decided on a motion to dismiss. Many other courts have made similar conclusions regarding a fiduciary determination at the motion to dismiss stage"); *Patten v. Northern Trust Co.*, 703

F. Supp. 2d 799, 808-09 (N.D. Ill. 2010) (when a plaintiff alleges in the complaint that defendant is a functional fiduciary by tracking the language of the statute, the court will not grant the defendant's motion to dismiss because a determination of fiduciary status is fact intensive); *see also IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418-19 (9th Cir. 1997) (regardless of terms of written documents, court will look at the actual control and authority an individual exercises over a plan).

Moreover, fiduciary status does not necessarily hinge on the exercise of discretion. Congress used the term "discretionary" when referring to authority or control over management or administration of the plan itself but omitted the term with respect to "exercis[ing] any authority or control" over the management or disposition *of plan assets*. 29 U.S.C. § 1002(21)(A)(i). This careful parsing of the definition reflects that Congress did not require a fiduciary to exercise discretion over participants' and beneficiaries' assets, but instead fiduciary duties automatically attach to control of assets. *Bd. of Trustees v. Wettlin Assocs., Inc.,* 237 F.3d 270, 273-74 (3d Cir. 2001); *see also Coldesina v. Estate of Simper,* 407 F.3d 1126, 1132 (10th Cir. 2005) ("In Congress's judgment, and consistent with general trust law, parties controlling plan assets are automatically in a position of confidence by virtue of that control, and as such they are obligated to act accordingly"); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d at 1421 (discussing how "[t]he statute treats control over the cash differently from control over administration," in order to "assur[e] that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries").

In this case, Plaintiff's claims are based on the Kirchdorfer Defendants' roles as co-fiduciaries and as "other persons" subject to liability under ERISA for direct breach of their

fiduciary duties and "knowing participation" in breaches of fiduciary duty by James, based on facts relating to the Defendants' replacement of the Plan's trustee and practical control over plan assets. *Martens v. Hewitt Assocs.*, 508 U.S. 248, 254, 260–61 (1993) (co-fiduciaries of ERISA plan can be liable for "knowing participation" in breaches of fiduciary duty; co-fiduciaries are subject to equitable relief under ERISA claims); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245–51 (2000) (ERISA permits claims for "knowing participation" against "other persons" involved in wrongdoing related to a plan); *LoPresti v. Terwillinger*, 126 F.3d 34, 39–40 (2d Cir. 1997) (reversing district court for focusing only on whether defendants were formal plan administrators and holding that ERISA liability can be found as to any person who "exercises *any* authority *or* control respecting management *or* disposition of [plan] assets" and reversing motion to dismiss on factual allegations that company president exercised some control over and acted wrongfully as to plan assets (emphasis original)); *Operating Engrs. Local 324 Fringe Benefit Funds v. Nicolas Equip., LLC*, 353 F. Supp. 2d 851, 853–55 (E.D. Mich. 2004) (granting summary judgment against officer who exerted some control over plan assets). Differentiating between discretionary and ministerial functions is unnecessary where the crux of the analysis is whether Defendants exercised "any authority or control" over "plan assets." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 886 (E.D. Pa. 2011).

Moreover, the Kirchdorfer Defendants' heavy reliance on *Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995), is misplaced. *Akers*, which was decided not by Rule 12(b)(6) motion but instead on summary judgment, principally involved allegations concerning conduct leading up to the formation of an ESOP, and the Sixth Circuit concluded that ERISA did not apply until the plan was actually formed. *Id.* at 230. As to the portion of *Akers* relating to the

termination of the ESOP, the Sixth Circuit held that a plan sponsor may terminate an ESOP without violating ERISA and that the decision to terminate is a business decision, not governed by ERISA fiduciary duties. Here, Plaintiffs do not dispute that the Kirchdorfer Defendants were entitled to terminate the Plan. They absolutely were permitted to do so. But they were forbidden from, among other things: firing the then-current trustee because it would not support the buyback transaction and installing an unqualified replacement; from taking multiple steps to drive down the company's financial forecasts in order to yield a lower transaction price; and from knowingly purchasing back the stock at less than fair value. *Martens*, 508 U.S. at 254, 260–61 (co-fiduciaries, such as those with control over who serves as plan trustee, can be liable for "knowing participation" in breaches of fiduciary duty); *Harris Trust & Sav. Bank*, 530 U.S. at 245–51 ("other persons," such as those who exercise any control over plan assets, and who were counterparties receiving the benefits of an allegedly prohibited transaction, can be liable for "knowing participation" in breaches of fiduciary duty). *Akers* excuses none of that conduct.[14]

In addition to failing to demonstrate that the Complaint lacks sufficient allegations that the Kirchdorfer Defendants were fiduciaries and that they violated their fiduciary duties, the Kirchdorfer Defendants likewise cannot deploy Rule 12(b)(6) to avoid the allegations that they engaged in a prohibited transaction. The Kirchdorfer Defendants argue that upon reading the Complaint, they are unable to determine "the type of prohibited transaction or self-dealing complained of." Mot. at 23. The second sentence of the Complaint states, "Plaintiffs seek relief relating to losses they incurred in connection with

---

[14] As noted elsewhere herein, the Kirchdorfers Defendants' attempt to introduce numerous documents, such as meeting minutes, PowerPoint presentations, and other documents, at the Rule 12(b)(6) stage is inappropriate and those documents, outside the pleadings and nowhere referenced in the Complaint, should be disregarded on the Rule 12(b)(6) motion even if they were properly authenticated, which they are not.

the sale of stock of ISCO Industries, Inc. from a now-terminated ESOP in which they were participants, back to the prior owners of that stock at a grossly deficient price." The Complaint identifies the total price for the transaction (Compl. ¶ 16) and the closing date of the transaction (*id.* at ¶¶ 17, 19). Although arguing that the Complaint should be dismissed because they cannot figure out which specific subsection of § 406(a) and (b) applies, the Kirchdorfer Defendants admit that the Complaint specifically calls out § 406(a)(1)(A) and (D) (Mot. at 23 n.15) and, in any event, Plaintiffs are not required in a complaint to specify by sub-sub-Section the statutes violated. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

The Complaint provides ample, direct allegations of fact that, if true, state a claim for violations of ERISA's prohibited transaction provisions.

## Conclusion

The Kirchdorfer Defendants' motion should be denied. Plaintiffs believe oral argument would assist the Court and requests that the Court schedule a hearing on the Kirchdorfer Defendants' motion.

Respectfully submitted,

*s/ Clark C. Johnson*
Clark C. Johnson
Michael T. Leigh
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
cjohnson@kaplanjohnsonlaw.com
mleigh@kaplanjohnsonlaw.com
Tel: (502) 242-9042

*Counsel for Plaintiffs*

**Certificate of Service**

Clark C. Johnson certifies that on August 6, 2020, he filed the foregoing Response

with the Court's ECF system which automatically served all counsel of record.


*/s/ Clark C. Johnson*