UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
*Electronically Filed*

NATHAN BEST, et al.

            *Plaintiffs*

v.                                        Civil Action No 3:20-CV-299-JRW

STEPHEN C. JAMES, et al.

            *Defendants*

**REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS CLASS ACTION COMPLAINT**

Plaintiffs' Opposition to Defendants' Motion to Dismiss provides no basis for denying Defendants' motion.  Rather than respond to Defendants' arguments head on, Plaintiffs provide the Court with a series of generic legal conclusions without any explanation as to how the law applies to their alleged facts or otherwise saves their Complaint from dismissal.  The Court therefore should compel arbitration, or dismiss the Complaint for failure to state a claim.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Subject to Mandatory Arbitration**

**A.    Plaintiffs' Claims Fall Squarely within the Broad Scope of Disputes they
Agreed to Individually Arbitrate in their Arbitration Agreements**

Forced to concede that they each executed valid agreements to arbitrate any claims arising from their employment with ISCO, ECF 49 at 3-4, Plaintiffs' only challenge to mandatory arbitration is to claim their ERISA claims fall outside the scope of arbitrable claims. *Id.* at 6-8.  They do not.

1

Plaintiffs' Opposition conveniently omits key language from the arbitration agreements signed by Hicks and Chmielewski, which explicitly include "all claims arising under . . . ERISA" within the definition of "Covered Claims."  ECF 45-7 & 8, ¶ 4.  They likewise ignore Plaintiff Best's agreement to arbitrate "any and all claims . . . under federal, state and local statutory or common law."  ECF 45-5, ¶ 1.  Thus, the language of the arbitration agreements at issue plainly covers the ERISA claims they have asserted.

Despite this plain language, Plaintiffs seek to avoid arbitration, citing *Fazio v. Lehman Bros., Inc.* for the proposition that a dispute falls outside an agreement's scope if the "action could be maintained without reference to the contract or relationship at issue."  340 F.3d 386, 395 (6th Cir. 2003).  Plaintiffs maintain that "the fact that Plaintiffs are former ISCO employees . . . has nothing to do with the[ir] [ERISA] claims," and that the transaction terminating their employer's ESOP plan has "nothing to do with Plaintiffs' employment."  ECF 49 at 6-7.

Plaintiffs' assertion that ERISA claims pertaining to their participation in the ESOP are unrelated to their ISCO employment is divorced from reality and can only result from willful blindness to the undisputed facts.  The ESOP, of course, is an ERISA-covered employee benefit plan established for the purpose of providing benefits to ISCO employees.  ERISA §§ 407(d)(5) & (6), 29 U.S.C. §§ 1107(d)(5) & (6).[1]  Under the ESOP's clear terms, participation in the plan is limited to ISCO employees (or former employees), and Plaintiffs were participants in the ESOP solely by virtue of their ISCO employment.  *See* ECF 45-1, Plan Doc. § 2.1 (eligibility to participate in Plan determined, in part, by years of service and employee status).  Indeed, its stated purpose is to provide eligible ISCO employees with "beneficial ownership interest in

---

[1] ERISA by its statutory terms governs relationships and benefits between employees and employers.

Company Stock [that] will give [them] a greater personal interest in the success of the Company." ECF 45-9, 2017 SPD at 1. Plaintiffs confirm as much in defining themselves as "participants in the ISCO [ESOP]" in the first paragraph of the Complaint. ECF 1, ¶ 1.

Even ignoring the clear language of the arbitration agreements and the plan document, and the obvious relationship of the ESOP to their employment, Plaintiffs' arguments still fail. The courts that have considered whether an ERISA claim stems from an employment relationship have all found that it does. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16cv1900, 2017 WL 3524682, at *3 (S.D.N.Y. Aug. 15, 2017) (plaintiff's ERISA fiduciary breach claims "arose out of, . . . or related to, his employment" and were arbitrable even though arbitration agreement didn't "expressly" identify such claims); *Williams v. Imhoff*, 203 F.3d 758, 766 (10th Cir. 2000) (plaintiffs' ERISA fiduciary breach claims arose out of their employment, in part, because they "were entitled to purchase company stock [through ESOP] . . . solely as a result of their employment"); *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 246 (S.D.N.Y. 2010) (ERISA claim was "clearly related to [plaintiff's] employment" and "falls squarely within scope" of arbitration provision); *Fusco v. Plastic Surgery Ctr., P.A.*, No. 2:15-CV-460-DBH, 2016 WL 845263, at *1 (D. Me. Mar. 4, 2016) ("Certainly [plaintiff's] rights concerning the profit sharing plan derive from her employment relationship with [defendant employer]"); *Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*, No. 03 CI. 929 (RCC), 2004 WL 2471372, at *4 (S.D.N.Y. Nov. 3, 2004) (former law firm partner's ERISA claims "clearly relate to [former partner's] professional relationship" with the firm").

Plaintiffs' argument that their ERISA claims are unrelated to their employment is specious. Their participation in the ESOP was a benefit due solely to their employment, the alleged fiduciary breach arose while they were participants in the plan, and their ability to bring

this ERISA action rests on their participation in that employee benefit program.  Best's claims

clearly "aris[e] out of or relat[e] to [his] . . . employment," and Hicks and Chmielewski's claims

likewise "aris[e] out of or relat[e] . . . to the[ir] employment relationship" with ISCO.[2]

Finally, as every Sixth Circuit authority on which Plaintiffs rely makes clear, the strong

federal policy favoring arbitration requires the Court to resolve any doubts about the parties'

intentions under the individual arbitration provisions in favor of arbitration.  *E.g.*, *Highlands*

*Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir.

2003).  This certainly is not a case in which "it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Masco*,

382 F.3d at 627 (quoting *Highlands*, 350 F.3d at 576-77, and *AT&T Techs., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 650 (1986)).  Plaintiffs have failed to provide any reason for this

Court to deviate from the clear language of the arbitration agreements that they signed.

**B.**     **The Plan Document Requires Arbitration of Plaintiffs' ERISA Claims**

*1.*     ***Both the Plan and the Individual Defendants Consented to Arbitration***
***of their ERISA Claims***

While the arbitration clauses in Plaintiffs' individual arbitration agreements are by

themselves sufficient to compel arbitration, Plaintiffs also undoubtedly consented to the

additional arbitration provision in the ESOP plan by continuing their employment and

participation in the Plan following its amendment.  Applying Kentucky law, the Sixth Circuit

---

[2] Any suggestion that Plaintiffs' claims pertaining to the ESOP could not have been
foreseen must be rejected.  *See* ECF 49 at 7.  In *Masco Corp. v. Zurich Am. Ins. Co.*, the Sixth
Circuit expressly rejected reading a "foreseeability" requirement into a broadly worded
arbitration agreement.  382 F.3d 624, 627-28 (6th Cir. 2004) ("Our task, of course, is limited to
enforcing the parties' agreement as written, and we have no license to write a 'foreseeability'
limitation into the arbitration agreement.").  Nor did "all of [the arbitration agreements] predate
the formation of the Plan," as Plaintiffs erroneously claim.  ECF 49 at 7.  Hicks and Chmielewski
executed their agreements on February 4, 2019 and January 23, 2019, respectively, well *after* the
Plan's formation in 2012.  ECF 45-7 & -8.

explained that an employee demonstrates acceptance of an arbitration agreement, even without a signature, by continuing to work for an employer. *Aldrich v. Univ. of Phoenix, Inc.*, 661 F. App'x 384, 390 (6th Cir. 2016) (citing *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006); *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005)).  The cases cited by Plaintiffs regarding consent under Kentucky law do not contradict this authority.  ECF 49 at 9-10.  They simply do not consider it.  Hicks and Chmielewski consented to the arbitration provision when they continued to work for ISCO until 2020 and 2019, respectively, and remained participants in the Plan beyond that.  Best also consented to the arbitration provision when he continued to participate in the ESOP after the plan amendment.  *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019) ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect.").

Plaintiffs' reliance on *Morrison v. Circuit City Stores*, 317 F.3d 646, 667 (6th Cir 2003), for the proposition that an arbitration provision that can be amended is unenforceable is misplaced.  Plaintiffs cite the argument of one of the *Morrison* parties, not the court's holding. *Id. Morrison* involved an interpretation of Ohio law, not Kentucky law, and is thus inapposite.[3]

Plaintiffs' reliance on *Brown v. Wilmington Tr., N.A.*, 2018 WL 3546186 (S.D. Ohio July 24 2018), and *Casey v. Reliance Tr. Co.*, 2019 WL 7403931 (E.D. Tex. Nov. 13, 2019), is likewise erroneous.  ECF 49 at 9 n.6.  In *Brown*, the plan was amended after plaintiff ended her employment and ceased all participation in the plan.  2018 WL 3546186, at **4-5.  In *Casey*, the plaintiff left employment and had not received notice of the amendment prior to filing the

---

[3] Plaintiffs further rely on *Day*, an unpublished district court opinion, for the proposition that the ability to amend a provision renders it unenforceable.  The provision addressed in *Day* was not part of an ERISA-covered plan, and *Day* is squarely at odds with the Ninth Circuit's decision in *Dorman*, where the arbitration provision in an ERISA plan was held enforceable.

lawsuit. 2019 WL 7403931, at **32, 35. Here, as Plaintiffs necessarily acknowledge in their Opposition, "those cases involved plan amendments added after plaintiffs' employment had ended." ECF 49 at 9 n.6. Unlike the plaintiff in *Brown*, all three Plaintiffs remained participants in the ESOP *after* the arbitration amendment was adopted. Additionally, while the court in *Casey* focused on whether the plaintiff had received notice of the plan amendment, Plaintiffs here do not and cannot claim that they had no such notice. They were provided with an updated SPD including the arbitration provision shortly after the Plan was amended. Christopher Feger Decl. ¶¶ 2-5 (attached hereto as **Exhibit 1**). Thus, in contrast to *Brown* and *Casey*, the Plaintiffs received notice of the Plan's arbitration amendment, and they assented to that requirement by voluntarily continuing their participation in the plan and, for Hicks and Chmielewski, their employment with ISCO. *See Dorman*, 780 F. App'x at 512; *Aldrich*, 661 F. App'x at 390.

### 2. The Plan's Arbitration Provision Does Not Offend ERISA § 409, 29 U.S.C. § 1109

Plaintiffs devote considerable space in their Opposition to arguing that the Plan arbitration provision presents an "unenforceable and invalid" limitation on Plan participants' ability under ERISA § 409 to recover losses that "inure[] to the plan as a whole." ECF 49 at 13-14. However, the Plan's requirement that ERISA claims be brought individually through mandatory arbitration does not disturb the substantive remedies available under ERISA § 409 for breach of fiduciary duty. The arbitration provision merely requires participants to bring claims in their "individual capacity and not in a representative capacity or on a class, collective, or group basis." ECF 45-6, § 14(b). As the Ninth Circuit explained in *Dorman*, 780 F. App'x at 514, with respect to an individual account plan, such as an ESOP, this procedure is fully consistent with the Supreme Court's holding in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552

U.S. 248 (2008).  As the court recognized, the Plan and Plaintiffs each agreed to arbitration on an individualized basis and can proceed on that basis without offending ERISA § 409.[4]

*Dorman* is not distinguishable, as Plaintiffs suggest without explanation.  ECF 49 at 15 n.9.  Plaintiffs assert that *Dorman* conflicts with Supreme Court and Sixth Circuit law, but do not identify which cases are in conflict.  They further maintain that the facts in *Dorman* differ from those in the instant case because the plaintiffs in *Dorman* continued to participate in the plan.  This is a false distinction as all three Plaintiffs continued to participate in the ESOP until it was terminated.[5]  In short, Plaintiffs fail to explain why *Dorman*, the only case to address the interplay between individual arbitration and ERISA, should not apply.

### 3.    *The Arbitration Provision Does Not Violate ERISA's Anti-Cutback Rule*

In arguing that the Plan arbitration provision violates ERISA's anti-cutback rule, Plaintiffs conflate venue/procedure with the question of what benefits they are entitled to obtain.  As Plaintiffs note, "[i]t is well-established that a party does not forgo the substantive rights afforded by a statute when she agrees to arbitrate a statutory claim but only submits to their resolution in an arbitral, rather than a judicial, forum."  ECF 49 at 12 (quoting *Morrison*, 317 F.3d at 670).  Plaintiffs allege in conclusory fashion but fail to explain how the "arbitration clause threatens participants' receipt of benefits that already accrued prior to the 2017 Plan amendment," or how the amendment "purports to place new conditions on them."  ECF 49 at 17.  Both of the cases cited in support of this proposition are inapposite.  *See Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004) ("whether the [anti-cutback] rule prohibits an

---

[4] Plaintiffs also argue that the ESOP's arbitration provision violates ERISA § 410, but the Ninth Circuit squarely addressed and rejected this argument in *Dorman*.  780 F. App'x at 513 ("An agreement to conduct arbitration on an individual basis, as in this case, does not 'relieve a fiduciary from responsibility or liability'" in violation of ERISA § 410).

[5] Plaintiffs also assert that the alleged nefarious intent of Defendants here (for which they have no support) serves to distinguish *Dorman*.  This distinction holds no weight.

amendment expanding the categories of postretirement employment that trigger suspension of payment of early retirement benefits already accrued"); *Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 594 F.3d 230, 233 (3d Cir. 2010) (plan amendment that conditioned a retiree's receipt of healthcare benefits on the retiree not choosing a lump sum pension benefit violated anti-cutback rule).  These cases addressed terms which created additional conditions for initial receipt of benefits, not where a dispute may be brought.  Thus, this argument fails.

## II.   Plaintiffs' Claims Should be Dismissed on the Merits for Failure to State a Claim

As Plaintiffs' Opposition makes clear, Plaintiffs have failed to satisfy the "threshold question" presented in "every case charging breach of ERISA fiduciary duty":  "whether [the alleged fiduciary] was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Because Plaintiffs' Complaint fails to plausibly allege that Defendants were acting as ERISA fiduciaries in the matters at issue, Plaintiffs' fiduciary breach claims must be dismissed under Rule 12(b)(6).  *Id.* at 237.

### A.   ISCO is Not a Proper Party to this Suit

Plaintiffs' absolute silence in their Opposition regarding the role of ISCO in the decisions to terminate the ESOP or the terms on which the ESOP sold its stock confirms the obvious: ISCO is not a proper party to this litigation and must be dismissed.  As Defendants point out in their opening brief, and as Plaintiffs simply ignore in their Opposition, the Complaint barely mentions ISCO.  ECF 45 at 20.  Plaintiffs lump ISCO and the trusts[6] into a collectively defined "Kirchdorfer Defendants" and never mention ISCO again.  ECF 1, ¶ 7.

In their Opposition, Plaintiffs assert in a footnote that grouping ISCO with the Kirchdorfers is justified "because the Kirchdorfers directly or indirectly *now own* all ISCO stock

---

[6] The Plaintiffs have now dismissed the Trust defendants from this action.  ECF-47.

and comprise the majority of its officers." ECF 49 at 2 n.2 (emphasis added). This factually and legally unsupported explanation is patently absurd. Plaintiffs offer no support for their position that ISCO is responsible for the prior acts of its alleged current owners. This assertion does not cure Plaintiffs' failure to allege how ISCO acted as a fiduciary in connection with the sales transaction. Without fiduciary status, it could not have breached any ERISA fiduciary duties.

### B.      The Kirchdorfers Did Not Act as Fiduciaries with Respect to the Termination of the ESOP or the Buyback of the Stock

With respect to the Kirchdorfers, Plaintiffs simply dismiss out of hand—"[t]hat argument fails," ECF 49 at 20— the binding case law that requires courts to distinguish "between fiduciary functions, which give rise to ERISA liability, and 'settlor' functions, which are akin to actions taken by the settlor of a trust and do not trigger ERISA liability." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995). As Defendants explained in their opening brief, and Plaintiffs ignore, employers, acting in their settlor capacity, are generally free under ERISA, "to adopt, modify, or terminate" welfare and pension benefit plans. ECF 45 at 17 (quoting *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508-09 (6th Cir. 2004) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999)); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Plaintiffs' response, citing *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993), is a blanket statement that "[a]nyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because Congress intended that term to be interpreted broadly." ECF 49 at 20. But in *John Hancock*, the Supreme Court does not address whether actions taken by corporate officers in their corporate capacity in furtherance of the decision to terminate an employee benefit plan are subject to fiduciary duty liability. The Supreme Court addressed *that* issue of dual business and fiduciary roles in *Pegram*, 530 U.S. at 225-26, where it

9

recognized that a person may wear both a settlor hat and a fiduciary hat.  And in *Hughes* and

*Curtiss–Wright Corp.*, it made clear that employers do not act as fiduciaries in adopting,

modifying or terminating an employee benefit plan.  Thus, because the Kirchdorfers were not

"acting as [] fiduciar[ies] . . . when taking the action subject to complaint," the claims against

them must be dismissed.  *Pegram*, 530 U.S. at 226.[7]

Plaintiffs' attempt to distinguish *Akers*, which plainly controls, falls flat.  As discussed in

Defendants' opening motion, the board in *Akers* had "explicitly reserved to itself the discretion

to direct the trustee of the ESOP to sell the plan's shares," as did the board here.  ECF 45 at 19

(quoting *Akers*, 71 F.3d. at 231).  "[B]ecause the decision to terminate the [ESOP] plan was

purely a business decision, the plaintiffs failed to state an actionable claim under ERISA."

*Akers*, 71 F.3d. at 232.  As in *Akers*, the Kirchdorfers acted purely in their corporate capacity in

participating in the decision to terminate the ESOP.  Their rationale for doing so, and any

personal gain they obtained as a result, do not make them fiduciaries.

Faced with the Sixth Circuit's unambiguous holding in *Akers*, Plaintiffs now

acknowledge "that the Kirchdorfer Defendants were entitled to terminate the Plan.  They

absolutely were permitted to do so."  ECF 49 at 23.  They now also necessarily concede that "the

decision to terminate is a business decision, not governed by ERISA fiduciary duties."  *Id.*  Yet,

they still maintain that their conclusory allegations of fiduciary status are sufficient to state a

claim that the Kirchdorfers acted as fiduciaries.

---

[7] Plaintiffs also cite *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) for the general proposition that the term "fiduciary" should be defined by considering the authority a person has or exercises over an employee benefit plan.  *Brock* does not involve settlor functions performed by corporate executives.

Plaintiffs' assertion that, because they have alleged that Defendants "had and exercised complete control over the ESOP (Compl. ¶¶ 6-7), . . . 'conclusory' or not, . . . suffices" to state a claim is flatly wrong.  ECF 49 at 20.[8]  None of the authorities on which Plaintiffs rely support the proposition that such conclusory statements meet the *Twombly/Iqbal* plausibility standard.  In *Senior Lifestyle Corp. v. Key Benefit Admins., Inc.*, No. 1:17-cv-02457-JMSMJD, 2017 WL 5483161, at *3 (S.D. Ind. Nov. 15, 2017), the plaintiff specifically alleged that the defendant performed more than ministerial duties when defendant determined whether individual claims for benefits should be paid.  The court directly rejected Plaintiffs' proposition here, stating "[t]he Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief," and "factual allegations must plausibly state an entitlement to relief 'to a degree that rises above the speculative level.'"  2017 WL 5483161, at *1 (citation omitted).

Similarly, in *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 808 (N.D. Ill. 2010), the plaintiff supported his claim of fiduciary status by alleging *how* the defendant "had the discretion to establish and change the investment alternatives among which participants could direct the investment of the Plan's assets allocated to their accounts."  *Id.*  And in *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420-22 (9th Cir. 1997), the court considered whether a contract that stated defendant "performs purely ministerial functions" accurately described that defendant's fiduciary status in light of defendant's authority to write checks and dispose of plan assets.  Neither *IT Corp.* nor the other cases Plaintiffs cite supports their plea for the Court to credit their conclusory allegations rather than dismiss their claims.

---

[8] Plaintiffs contend that their allegations could not be conclusory because ISCO has filed a separate lawsuit against a former employee who provided certain information referenced in the Class Action Complaint.  ECF 49 at 19.  Of course, ISCO's claim that a former employee violated his non-disclosure agreement by disclosing information does not mean Plaintiffs' allegations state a plausible claim for relief under ERISA.

**C.      The Kirchdorfers Did Not Control Plan Assets**

To the extent Plaintiffs argue that the Kirchdorfers exercised control over plan assets and therefore were fiduciaries by virtue of their role in terminating the plan, not one of the proffered authorities supports this proposition.[9]  Instead, like with many of the authorities cited in their Opposition, Plaintiffs' discussion of case law regarding management or disposition of plan assets provides a string of general legal propositions that may be, in a vacuum, correct, but they do not reflect or support the allegations made in the Complaint.  Indeed, Plaintiffs level no allegation in the Complaint, nor include any discussion in their Opposition, regarding the Kirchdorfers' control of plan assets.  Paragraphs 6 and 7 of the Complaint—the only allegations cited by Plaintiffs to support their control of plan assets argument, ECF 49 at 20—simply identify the Kirchdorfers as executives of ISCO, and contain no allegations that they controlled plan assets.

**D.      Plaintiffs Cannot Allege Facts Sufficient to Support Claims for Breach of Fiduciary Duty**

Plaintiffs have failed to show that their allegations are sufficient to demonstrate that the Defendants acted as fiduciaries, and how their allegations plausibly allege any breaches of fiduciary duties.  Plaintiffs' Opposition reiterates the string of unsupported factual allegations

---

[9] Every case cited by Plaintiffs in support of this argument is inapposite to the facts and claims in this case.  *See Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 275 (3d Cir. 2001) (plaintiff board delegated to defendant the "day to day responsibility to control, manage, hold, safeguard, and account for the Fund's assets and income," and defendant allegedly paid itself over $42,000 from Fund); *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1133 (10th Cir. 2005) (plan accountant who received plan contribution funds from the plan and deposited them into his business account controlled plan assets); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (does not address control of plan assets); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (company executive controlled plan assets when he commingled plan assets with the company's general assets, and used them to pay company creditors); *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equip., L.L.C.*, 353 F. Supp. 2d 851, 853-55 (E.D. Mich. 2004) (officer who diverted plan benefit funds to his alter-ego LLC and then used those funds to pay his own creditors controlled plan assets); *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 891 (E.D. Pa. 2011) (life insurance company arguably controlled plan assets).

and legal conclusions in the Complaint and then asserts in conclusory fashion that these allegations are sufficient to plausibly state a claim.  ECF 49 at 17-20, 23-24.  They further ignore the facts introduced by Defendants that are clearly integral to the allegations in the Complaint, claiming that they are self-serving and not authenticated.[10]  Instead, these facts demonstrate the process undertaken to terminate the ESOP and buy the stock from the ESOP participants, including the exclusion of the Kirchdorfers from anything related to setting the price, and the installation of Steve James as Trustee to exercise exclusive discretionary authority with respect to the buyback price.  *See* ECF 45 at 4-5.  As discussed in Defendants' opening brief, circuit law allows for the introduction of documents vital to the complaint.  ECF 45 at 3 n.3.  The mere fact that they do not support Plaintiffs' narrative does not render them self-serving.

Plaintiffs' adamant assertion that Steve James was installed as the fiduciary because Wilmington Trust refused to agree to a termination and sale is belied by the settlement agreement between Wilmington Trust and the Department of Labor in which Wilmington Trust confirms that it is exiting the independent fiduciary line of business.[11]  As discussed in

---

[10] Plaintiffs argue that the Court should not consider any of Defendants' attachments because they are not authenticated, citing *Harris v. City of St. Clairsville, Ohio*, 330 F. App'x 68 (6th Cir. 2008).   But *Harris* applied language that was deleted from Fed. R. Civ. P 56(e) in 2010, and addressed a district court's discretionary exclusion of redundant and facially unreliable exhibits, which has no application to consideration of the controlling contracts, plan documents, and corporate records submitted with Defendants' motion, which courts regularly consider at the motion to dismiss stage.  *E.g.*, *United States v. Safeco Ins. Co. of Am.*, No. 5:13-CV-00009-TBR, 2013 WL 5970435, at *3 n.1 (W.D. Ky. Nov. 8, 2013).

[11] Settlement Agreement and Release between U.S. Dep't of Labor and Wilmington Trust, N.A., at 2 (April 28, 2020), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/public-disclosure/foia/wilmington-trust-settlement-agreement.pdf  ("Wilmington Trust represents that it has ceased providing services as a trustee or other fiduciary in connection with ESOP transactions, and that the last ESOP transaction for which Wilmington Trust served as a trustee or other fiduciary closed on September 23, 2017.").

Defendants' opening brief, Plaintiffs' conclusory allegations add up to nothing more than their unsupported belief that the price the ESOP participants received for their shares was too low.

Each of Plaintiffs' other allegations regarding the actions taken by Defendants is contradicted by the demonstrated facts or is simply conclusory in nature.  While Plaintiffs claim there was a "rubber stamp" between the Kirchdorfers and Defendant James in setting the terms on which the ESOP sold its stock, the sole allegation for this claim is that the Kirchdorfers and James should have known that the price did not reflect fair market value.  ECF 1, ¶ 19.  Plaintiffs also allege that ISCO or the Kirchdorfer Defendants had a duty to determine, that the 2018 Transaction was in the best interests of and fair to Plan participants or was for adequate consideration.  But as discussed above, ISCO and the Kirchdorfers wore their corporate hats in terminating the ESOP, and were not Plan fiduciaries in effectuating that business decision.  Similarly, while Plaintiffs claim that ISCO and the Kirchdorfers played a role in determining or approving the sale price, they fail to show how any of these Defendants had a fiduciary role in such matters nor acknowledge Trustee James' sole discretion and responsibility in those areas.  Finally, because the Complaint fails to allege any underlying breach by Trustee James or the Committee, Plaintiffs' claim that Defendants "fail[ed] to properly monitor the acts and omissions of the Trustee or the Committee" is conclusory and must be dismissed.  These limited, conclusory claims fall well short of the plausibility pleading standard articulated in *Twombly* and *Iqbal.  See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiffs must allege facts sufficient to raise a "right to relief beyond the speculative level"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

E.     **Plaintiffs Have Not Alleged Facts Sufficient to Maintain a Claim that the Kirchdorfers Engaged in Any Prohibited Transactions**

Plaintiffs' response concerning their prohibited transaction claims confirms they have failed to plausibly allege which elements of the relevant statutory provisions Defendants allegedly violated, and how.  Plaintiffs ignore the fact that the complaint neither alleges adequate facts that they, as fiduciaries, caused the ESOP to engage in a prohibited transaction with a party in interest, nor identifies the parties in interest who allegedly engaged in such a transaction with the ESOP.  *See* ECF 45 at 23-25.  While Plaintiffs have now conceded that Count II of their complaint contemplates causes of action under ERISA § 406(a)(1)(A) and (a)(1)(D) only, these claims nonetheless fail because they rest on the same deficient underlying allegation on which Plaintiffs rely for their fiduciary breach claims, that Defendants underpaid for ISCO stock.

Plaintiffs contend *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) relieves them from having to identify the elements of the statutory provisions they invoke, and by implication, from then plausibly alleging facts to show entitlement to relief.  But *Johnson* does not stand for such a broad proposition, and Plaintiffs' prohibited transactions claims falls short.  *Johnson*, 574 U.S. at 11 (summarily reversing dismissal of complaint that indisputably satisfied *Twombly* and *Iqbal's* standards for factual pleadings but failed to specify that these claims arose under § 1983).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order compelling Plaintiffs to arbitrate their claims on an individualized basis, and to either stay the litigation pending the outcome of arbitration or dismiss the lawsuit outright.  Alternatively, the Court should grant Defendants' motion to dismiss the compliant for failure to state a claim.

15

Respectfully Submitted,


Date: August 20, 2020                    /s/ Theresa A. Canaday

                                         Theresa A. Canaday
                                         Jason P. Renzelmann
                                         Carrie M. Mattingly
                                         FROST BROWN TODD LLC
                                         400 West Market Street, 32nd Floor
                                         Louisville, Kentucky 40202
                                         T: (502) 589-5400
                                         F: (502) 581-1087
                                         tcanaday@fbtlaw.com
                                         jrenzelmann@fbtlaw.com
                                         cmattingly@fbtlaw.com

                                         Paul J. Ondrasik, Jr. (*pro hac vice*)
                                         Sara Pikofsky (*pro hac vice*)
                                         STEPTOE & JOHNSON LLP
                                         1330 Connecticut Avenue, NW
                                         Washington, DC 20036
                                         T: (202) 429-6408
                                         F: (202) 429-3902
                                         spikofsky@steptoe.com
                                         pondrasik@steptoe.com

                                         *Counsel for Defendants*
                                         *James J. Kirchdorfer, Jr., Mark*
                                         *Kirchdorfer, and ISCO Industries, Inc.*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon all parties of record on this 20th day of August, 2020 via the court's CM/ECF system.


                                         /s/ Theresa A. Canaday


16