United States District Court
Western District of Kentucky
Louisville Division

| | |
|---|---|
| Nathan Best *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> Stephen C. James *et al.*, <br><br> Defendants | Case No. 3:20-cv-299-RGJ-RSE |

**Plaintiffs' Response to Court's Request in Its**
**January 10, 2023 Memorandum Opinion and Order**

Plaintiffs Nathan Best, Matthew Chmielewski, and Jay Hicks respond to the Court's directive that they "explain to the Court why" the claims against Defendant Stephen James, as the ESOP Trustee, "are not within the scope of" the ESOP Amended Agreement "and should not be" dismissed to arbitration. ECF No. 99, PageID#682.

First, the arbitration clause here is invalid because it acts as a "prospective waiver of [Plaintiffs'] right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (citation omitted) (emphasis omitted); *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) (a valid arbitration clause "does not alter or abridge substantive rights; it merely changes how those rights will be processed"). This case seeks redress for the Plan. Indeed, as a matter of law, the claims lodged here can *only* be brought on behalf of the Plan. *See, e.g., Cedeno v. Argent Tr. Co.*, 2021 WL 5087898, at *4 (S.D.N.Y. Nov. 2, 2021) (plan participant who seeks to recover benefits for the plan "must proceed in a representative capacity on behalf of the plan"). As the Supreme Court's recent decision in *Viking River* recognized, this type of "[n]on-class representative action[] in which a single agent litigates on behalf of a single principal [is] part of the basic architecture . . . of *substantive* law." 142 S. Ct. at 1922 (emphasis added). And "the FAA does not require courts

1

to enforce contractual waivers of *substantive* rights and remedies." *Id.* at 1919. The arbitration clause accordingly cannot eliminate Plaintiffs' ability to sue in a representative capacity on behalf of the Plan.[1]

Nor can the arbitration clause permissibly limit Plaintiffs' ability to seek restoration of the *entire* loss caused by the fiduciary breach here. ERISA makes fiduciaries "personally liable to make good to [the] plan *any* losses *to the plan* resulting from" a fiduciary breach use of assets of the plan[.]" 29 U.S.C. § 1109(a); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ("a plaintiff with Article III standing" may sue on behalf of the plan and "may seek relief under § 1132(a)(2) that sweeps beyond [that plaintiff's] own injury"). When, as here, a participant seeks relief under § 1132(a)(2), the claim is necessarily "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 246 (2008)("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"). And the plaintiff is entitled to seek restoration of "any" losses caused by a fiduciary breach and disgorgement of "any" gains the fiduciary made. 29 U.S.C. § 1109(a); *see LaRue*, 552 U.S. at 256 (where, as here, "a fiduciary breach diminishes plan assets payable to all participants and beneficiaries . . . it creates the kind of harms that concerned the draftsmen of § [1109]"); *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763 (4th Cir. 2019) (permitting individual ESOP plaintiff to recover entire loss on behalf of the plan).

---

[1] As Plaintiffs stated in their response to the ISCO Defendants' motion to dismiss, "As expressly provided by ERISA and corresponding Supreme Court authority, this case seeks to redress harm to the Plan as a whole as a result of that transaction." ECF No. 49, PageID#384. In that response and in their motion for reconsideration, Plaintiffs accordingly invoked the doctrine that forbids an arbitration clause from eliminating a plaintiff's statutory rights. Plaintiffs continue to respectfully believe that this Court should reconsider its ruling with respect to the ISCO Defendants' motion to dismiss for the reasons reiterated in this brief.

Because the express remedy available under § 1132(a)(2) is restoration of "any" losses, the arbitration clause cannot eliminate that remedy.

In short, as a matter of law, the claims here are brought on behalf of the Plan, and Plaintiffs have a clear statutory right to recover the entire loss. But under this arbitration clause, Plaintiffs are forbidden from suing in a representative capacity, and they cannot obtain the full loss restoration that ERISA provides. The eleventh-hour amendments to the ISCO ESOP plan adding the arbitration and class-waiver provisions thus are contrary to federal law, and the Court should not invoke those provisions *sua sponte* to require individual arbitration of the claims against James. *See, e.g., Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613 (7th Cir. 2021).

The second reason Plaintiffs believe their claims against James should not be dismissed to arbitration under the ESOP arbitration provision is that James has not established that Plaintiffs agreed to that provision. When evaluating an arbitration agreement, the Court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) whether (as here) Congress intended the federal statutory claims at issue to be non-arbitrable. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). "[N]o matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).

ISCO's employees agreed to a plan of employee stock ownership in 2012, agreeing to an ESOP Plan that did *not* include an arbitration clause. They spent their earnings toward

owning a piece of the company for which they worked every day, an ability to have some ownership interest in their livelihood.

While the Sixth Circuit in *Hawkins* did observe that it "need not, and [was] not, decid[ing] whether an arbitration provision in the plan documents would subject § 502(a)(2) claims to arbitration," *Hawkins*, 2022 WL 1236954, at * 9 (6th Cir. April 27, 2022), the Sixth Circuit did observe that it would need a showing of "sufficient manifestation of the Plan's consent to arbitrate these claims," *id*. at *10. Here, like in *Hawkins*, there is no such cogent evidence, given that the *only* evidence is that the same people who are defending this litigation were the ones who unilaterally added arbitration and class-action waiver clauses to the agreement, did so shortly before terminating the Plan in their own self-interest to own ISCO's stock outright, and did so without informing the Plan participants until later.

In other words, the facts here have all the markers of, as the *Hawkins* court noted in citation, "[a]llowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse." *Id*. at *9 (quoting *Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Trust, N.A.*, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018)).

Indeed, Defendants have *admitted* that there was no notice to Plan participants of the amendment of the Plan to include an arbitration and class-action waiver provision, given that Defendants' Declaration filed in *reply* only on their motion to dismiss swore, under oath, that the amendment was made on July 25, 2017, but that the amended Plan documents were not sent to the ESOP participants until April 2018—two months *after* the Plan terminated in February 2018. ECF No. 54-1 ¶¶ 2–3. So, not only did the fox guard the henhouse, but it also snuck off and hid its actions from Plan participants while it effected the

4

buyback of ISCO's stock and termination of the Plan, before telling Plan participants about changes to the Plan documents to ostensibly require arbitration and preclude any class action.

Whatever dicta the Sixth Circuit included in its *Hawkins* opinion, it unquestionably did not decide that an 11th-hour amendment to a Plan affecting participants' rights not disclosed to participants until *after* their ESOP had been terminated was conduct that could bind participants and their Plan to individual arbitration (of claims that belong to the Plan and must be brought for the benefit of the plan as a whole) and no class actions. But the Court need not look to *Hawkins*' dicta, because Congress made clear that the aim of federal law is to provide standards of conduct to *protect* ERISA plan participants, not lower the standards of conduct to which Plan fiduciaries might be held (the practical consequence of permitting the ISCO Defendants' secret Plan amendment here) or limit Plan participants' ability to seek redress of wrongdoing to the Plan.

Congress made this clear in the purposes of ERISA: "…that owing to the *lack of employee information and adequate safeguards concerning their operation*, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, *that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans*." 29 U.S.C.§ 1001(a) (emphasis added). "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by *requiring the disclosure and reporting to participants and beneficiaries of financial and other information* with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, *and by providing for* appropriate

5

remedies, sanctions, and *ready access to the Federal courts*. 29 U.S.C. §1001(b) (emphasis added).

Finally, as to the issue of whether anyone agreed that the claims Plaintiffs allege against James would be arbitrated, Plaintiffs' position on that is laid out in its prior briefing and herein: They did not, and the other Plan participants could not have done so, either, given they were not given notice of the addition of the arbitration clause until *after* it was made and *after* the Plan was terminated.

And as for James, at no time, even after this Court's entry of an order dismissing the ISCO Defendants based on those Defendants' arbitration arguments, has James expressed a belief that the claims against him are subject to arbitration. But the absence of a formal request by James to dismiss the claims against him on the basis of the ESOP arbitration provision is not all the Court has to go on: James also omitted any defense of arbitrability in his Answer and Affirmative Defenses. *See* ECF No. 43. And he has participated in this case, including stipulating to discovery as to the claims against him (ECF No. 76), participating in a scheduling conference and preparing a schedule for this case (ECF No. 97), responding to discovery and producing documents, and preparing initial disclosures. Not only does James not even believe himself that the claims against him are subject to arbitration, he has shown his intention to litigate, not arbitrate. Accordingly, there is no basis for this Court to decide that the Plaintiffs and James agreed to arbitrate the claims against James, and, even if they had, James has waived any right to arbitrate. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 716–21 (6th Cir. 2012).[2]

---

[2] Per the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713–14 (2022), the only federal-law question relevant to waiver of an arbitration clause is whether the party to whom it applies "acted inconsistently"; there is no proper consideration of whether Plaintiffs here were prejudiced or not.

Respectfully submitted,

/s/ Michael T. Leigh
Clark C. Johnson
Michael T. Leigh
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:    (502) 416-1630
Email: cjohnson@kaplanjohnsonlaw.com
            mleigh@kaplanjohnsonlaw.com

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on February 6, 2023, I filed the foregoing using the Court's CM/ECF filing service, which causes electronic notification on all counsel of record.

/s/ Michael T. Leigh
*Counsel for Plaintiffs*